## STATE OF CONNECTICUT *v.* RICHARD LUBUS
### (14013)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued September 25—decision released November 6, 1990

*Michael K. Courtney,* assistant public defender, and *Valerie J. Quinn,* deputy assistant public defender, with whom, on the brief, was *Patricia Sloan,* legal intern, for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *Walter Flanagan,* state's attorney, and, on the brief, *Christopher Alexy,* deputy assistant state's attorney, for the appellee (state).

PETERS, C. J. The sole issue in this appeal is whether a convicted felon who has permission to serve his sentence in a private home may be found guilty of the crime of escape under General Statutes § 53a-169 (a) (2)[1] for

---

[1] General Statutes (Rev. to 1989) § 53a-169 provides in relevant part: "ESCAPE IN THE FIRST DEGREE: CLASS C FELONY. (a) A person is guilty of escape in the first degree . . . (2) if he escapes from any . . . community residence to which he was transferred pursuant to subsection (e) of section 18-100 and he is in the custody of the commissioner of correction . . . ."

General Statutes (Rev. to 1989) § 18-100 (e) provides in relevant part: "WORK-RELEASE AND EDUCATION-RELEASE PROGRAMS. . . .

"(e) If the commissioner of correction deems that the purposes of this section may thus be more effectively carried out, he may transfer any person from one correctional institution to another . . . or to an approved community residence with the concurrence of the warden, superintendent or person in charge of the facility to which said person is being transferred. Any inmate so transferred shall remain under the jurisdiction of said commissioner. Any inmate transferred to an approved community residence shall also be subject to specifically prescribed supervision by personnel of the department of correction until his definite or indeterminate sentence is completed."

a single failure to report to his designated supervising officer. In response to the state's filing of an information charging the defendant Richard Lubus with escape, for such failure to report, he filed a motion to dismiss the information that challenged the applicability and the constitutionality of § 53a-169 (a) (2). When the trial court denied the motion, he entered a conditional plea of nolo contendere, pursuant to General Statutes 54-94a and Practice Book § 4003 (a),[2] preserving his right to appeal the trial court's ruling. After an appropriate canvass, the court accepted the defendant's plea and imposed a one year sentence consecutive to the defendant's prior sentence. We transferred the defendant's subsequent appeal to the Appellate Court to this court in accordance with Practice Book § 4023 and now reverse the judgment of the trial court.

The facts are undisputed. In the case underlying the defendant's original sentence, he pleaded guilty to a

[2] General Statutes § 54-94a provides in relevant part: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

Practice Book § 4003 (a) provides in relevant part: "APPEALS OF RULINGS ON MOTIONS TO DISMISS OR SUPPRESS FOLLOWING JUDGMENTS ENTERED UPON CONDITIONAL PLEAS OF NOLO CONTENDERE

"(a) When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. . . ."

charge of possession of narcotics with the intent to sell, in violation of General Statutes § 21a-277 (a). This conviction resulted in a sentence of five years imprisonment, suspended after two years, with three years probation. His probation required the defendant to undergo drug screening.

The commissioner of correction, exercising his authority under General Statutes § 18-100 (e),[3] immediately prepared to transfer the defendant to a "community residence" program that permitted him to live in his own home. As part of the transfer process, the defendant signed a Community Residence Agreement expressly providing that his failure to report as scheduled to his supervising officer, Juan Castillo, would be considered an "escape" pursuant to § 53a-169. The defendant entered the "community residence" program and was placed under parole supervision on March 24, 1989.

Although directed to report to Castillo on June 27, 1989, the defendant failed to do so. After a status conference with a parole supervisor, Castillo applied for an arrest warrant on August 15, 1989, that led to the initiation of the present proceedings. The record is silent about what contact, if any, the defendant had with Castillo between late June and mid-August.

I

The defendant's principal contention is that the trial court should have granted his motion to dismiss because his conduct does not constitute an "escape" within the terms of § 53a-169 (a) (2).[4] The relevant provisions of

---

[3] See footnote 1, supra.

[4] At oral argument, the defendant abandoned alternate arguments for reversal contained in his brief in which he had maintained that (1) a private home fell outside the confines of the community residence program contemplated by General Statutes § 18-100 (e), and (2) General Statutes

§ 53a-169 (a) (2) impose criminal sanctions for "escapes from . . . [a] community residence to which [a defendant has been] transferred pursuant to subsection (e) of section 18-100 . . . . " We have not previously had the occasion to address the narrow issue before us, i.e., whether a single failure to report to a supervising officer may be punished as an "[escape] from . . . [a] community residence." As a general proposition, we recently noted by way of dictum in *Asherman* v. *Meachum,* 213 Conn. 38, 48, 566 A.2d 663 (1989), that, for an individual on home release, "absconding [from supervision] constitutes a new crime, escape, that may lead to an added prison term. General Statutes § 53a-169 (a) (2)." That observation arose, however, in the context of our determination in *Asherman* that an individual on home release does not have a constitutionally protected liberty interest to resist official inquiry into his psychological status. Id., 47–49. Because our decision in *Asherman* did not purport to define what conduct would constitute absconding, it provides no answer to the issue posed here.

Interpretation of § 53a-169 (a) (2) must begin with the proposition that penal statutes "are to be construed strictly and not extended by implication to create liability which no language of the act purports to create." *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983); *Nowak* v. *Nowak,* 175 Conn. 112, 125, 394 A.2d 716 (1978); see also *State* v. *Mattioli,* 210 Conn. 573, 579, 556 A.2d 584 (1989); *State* v. *Champagne,* 206 Conn. 421, 430, 538 A.2d 193 (1988). This principle of strict construction informs the general rule of statutory interpretation that " 'in the interpretation of statutes, the intent of the legislature is to be found not in what it

§ 53a-169, if applicable to the facts of this case, was so unconstitutionally vague as to violate the requirements of due process under the fourteenth and fifth amendments to the United States constitution and of article first, §§ 7, 8, and 9 of the Connecticut constitution.

meant to say, but in what it did say.' " *State* v. *Roque,* supra, 150, quoting *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979). " 'If the words are clear and unambiguous, "it is assumed that [they] express the intention of the legislature" . . . and we need inquire no further.' " (Citation omitted.) *State* v. *Mattioli,* supra, 576. The rule that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise; General Statutes § 1-1 (a); *State* v. *Mattioli,* supra, 579; also guides our interpretive inquiry.

In this case, neither the defendant nor the state argues that the word "escape" in 53a-169 (a) (2) is unclear or ambiguous, nor does the fact that opposing counsel contend for different meanings support such a characterization. See *Harris Data Communications, Inc.* v. *Heffernan,* 183 Conn. 194, 198, 438 A.2d 1178 (1981). Furthermore, the text of the statute nowhere indicates that the legislature intended to assign to the word anything other than its ordinary meaning. Accordingly, in the absence of other statutory guidance, we may appropriately look to the meaning of the word as commonly expressed in the law and in dictionaries. *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981).

Our task, then, is to determine whether, strictly construed, the ordinary meaning of the criminal prohibition against "escapes from . . . [a] community residence" in § 53a-169 (a) (2) encompasses a single failure to report to a supervisor. The paradigmatic example of an "escape" is a prison break. A lawfully incarcerated person who "breaks out" of his confinement behind steel bars and concrete walls has unquestionably committed an "escape." Black's Law Dictionary (5th Ed. 1979) underscores the assumed nexus between escape and custody when it defines

"escape" as "[t]he departure or deliverance out of custody of a person who was lawfully imprisoned before he is entitled to his liberty by the process of law."

The New York Penal Code and the American Law Institute's Model Penal Code, upon which our legislature relied when it revised the state penal code in 1969; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1969 Sess., p. 11; both contain "escape" provisions that have custodial overtones. The Court of Appeals of New York, interpreting the escape provisions of its penal code, understood escape to mean " 'to get away (as by flight or conscious effort): break away, get free or get clear (the prisoner *escaped* from prison) . . . .' " (Emphasis in original; citations omitted.) *People* v. *Hutchinson,* 56 N.Y.2d 868, 870, 438 N.E.2d 1109, 453 N.Y.S.2d 394 (1982). Under the Model Penal Code, a person commits the crime of "escape" if he "unlawfully removes himself from official detention or fails to return to official detention following [a] temporary leave granted for a specific purpose . . . ." II A.L.I., Model Penal Code and Commentaries (1962) § 242.6.

The provisions of § 53a-169 in their entirety lend further support to the proposition that "escape" in § 53a-169 (a) (2) was intended to incorporate misconduct commonly understood as arising out of unauthorized departures from custodial constraints. Section 53a-169 (a) (2) itself criminalizes, in addition to "escape" from "any . . . community residence," "escape" from "any public or private, nonprofit halfway house, group home or mental health facility." Section 53a-169 (a) (6) criminalizes "escape" from "a hospital for mental illness." Section 53a-169 (a) (7) provides that a person is guilty of "escape" if, "while under the jurisdiction of the psychiatric security review board, but not confined to a hospital for mental illness, he leaves the state without authorization of the board."

Consistently with the Model Penal Code, the legislature has also defined "escape" to include the failure of a person to return from an authorized furlough; General Statutes § 53a-169 (a) (4); or from work or education release. General Statutes § 53a-169 (a) (5). These various subsections of § 53a-169 represent two decades of legislative redefinition of the crime of "escape" to accommodate the needs of changing rehabilitation practices and prison overcrowding. The unifying overall theme of § 53a-169 is that an individual will risk punishment for "escape" for an unauthorized departure from, or failure to return to, whatever may be designated as his place of incarceration or confinement. That theme illuminates the meaning of § 53a-169 (a) (2). See *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984); *Finkenstein* v. *Administrator,* 192 Conn. 104, 110, 470 A.2d 1196 (1984).

Read in context, § 53a-169 (a) (2) simply identifies another environment—a community residence—from which an unauthorized departure, or to which a failure to return, is possible and made culpable. The subsection does not, in this one instance, impose criminal sanctions for an "escape" that has no demonstrated custodial nexus.

In sum, taking into account the applicable principles of statutory construction, we are persuaded that § 53a-169 (a) (2) does not penalize as an "escape" a single failure to report to a supervisor. We conclude, rather, that § 53a-169 (a) (2) employs the term "escape" to contemplate an unauthorized departure from, or failure to return to, a "community residence." We need not decide today whether, at some juncture, repeated failures to report as scheduled would reasonably support an inference of present or imminent custodial irregularity and thus evidence a violation of § 53a-169 (a) (2). A single failure to report cannot, however, reasonably be construed as an unauthorized departure or failure to return.

On the sparse record of this case, therefore, the defendant's conviction for violation of § 53a-169 (a) (2) cannot be sustained. We know nothing about the defendant's actual whereabouts at the time when he was required to report to his supervisor and, in this one instance, failed to do so. The state has neither alleged nor proved that the defendant had absented himself, or threatened to absent himself, from his "community residence" at any relevant time. We hold only that proof of his single failure to report was insufficient to prove him guilty of the crime of "escape."

## II

The defendant also argues, secondarily, that the commissioner of correction's authority under General Statutes § 18-100 (d)[5] to promulgate rules of conduct for persons transferred to a "community residence" does not include the authority to define "escape" to include conduct that the legislature itself has not criminalized. We agree.

It is fundamental that the power to enact laws resides with the legislature and may not be delegated to an administrative agency. *New Milford* v. *SCA Services of Connecticut, Inc.*, 174 Conn. 146, 149, 384 A.2d 337 (1977). The legislature may, however, "delegat[e] to an administrative agency the power to 'fill in the details,' " of a statutory scheme, provided that it establishes an articulable standard for the agency to follow. Id.

Section 18-100 (d) authorizes the commissioner of correction to promulgate "such regulations as he deems

[5] General Statutes (Rev. to 1989) § 18-100 provides in relevant part: "WORK-RELEASE AND EDUCATION-RELEASE PROGRAMS. . . .

"(d) The commissioner of correction shall establish such regulations as he deems necessary for the administration of this section and section 18-101 and for the conduct of persons granted the privileges of this section; and he may suspend the privileges of any persons who violate such regulations or whose conduct he believes is unsuitable for the continuation of such privileges."

necessary for the administration of [§ 18-100]'' and to suspend privileges, such as the release to a community residence, of persons who violate those regulations. Relying on this authority, the commissioner promulgated a Community Residence Agreement, which the defendant signed, expressly informing the defendant that failure to report to his supervising officer would subject the defendant to criminal sanctions for "escape."

The question before us is whether § 18-100 (d) authorizes the criminal enforcement of the "escape" sanctions described in the Community Residence Agreement. The state argues that, in treating a failure to report as an "escape" under § 53a-169, the commissioner was not enacting a new statute, but was merely "clarif[ying] for the defendant precisely what is an 'escape' from his community residence placement." The defendant correctly notes, however, that enforcing the commissioner's "clarification" in this case would, in effect, include within the ambit of a criminal statute conduct that the statute itself, as we have held above, does not expressly proscribe. Such an enlargement of penal sanctions exceeds the authority of the commissioner. Accordingly, we conclude that although § 18-100 (d) confers upon the commissioner extensive rule-making authority over persons transferred to a community residence,[6] it does not authorize the prosecution of a single failure to report to a supervising officer as an "escape" under § 53a-169 (a) (2).

The judgment is reversed and the case is remanded with direction to set aside the defendant's conviction and for further proceedings.

In this opinion the other justices concurred.

---

[6] General Statutes § 18-100 (d) confers broad authority on the commissioner of correction to require unrestricted compliance with any provision of the community residence as a condition of continued eligibility for community residence or home release status. See *Asherman* v. *Meachum,* 213 Conn. 38, 50–52, 566 A.2d 663 (1989), and cases therein cited. See footnote 5, supra, for the text of § 18-100 (d).