[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner, Johnnie Mungo, challenges by writ of habeas corpus, his arrest and conviction for the crime of escape in the first degree pursuant to General Statutes 53a-169. In his petition, he claims that he is being illegally detained because: (1) the canvassing court accepted the petitioner's plea of guilty to the crime of escape in the first degree even though the petitioner's conduct was not proscribed by any Connecticut criminal statute; (2) the canvassing court accepted the petitioner's plea of guilty without determining that he understood the nature of the offense and the consequences of his plea; and (3) he was deprived of adequate and effective assistance of counsel.
The evidence presented with respect to the petitioner's amended petition dated July 12, 1991, established the following facts: As a result of a conviction of burglary in October, 1988 and a guilty plea on a misdemeanor charge in March, 1990, the petitioner was serving a total effective sentence of two and one-half years. On March 27, 1990, the petitioner was approved for supervised home release to a community residence pursuant to General Statutes 18-100 (e) and was released to his mother's home. On the day that he was released, the petitioner met with CT Page 1003 his supervisory officer who explained to him that he must report to the supervising officer once a week and that a failure to do so would result in a charge of escape in the first degree.
After reporting to his supervising officer on April 17, 1990, the petitioner failed to appear for any of his weekly appointments for a period of approximately sixteen weeks. Moreover, attempts to contact the petitioner by telephone, U.S. mail and home visits were unsuccessful. As a result, an arrest warrant was issued by the court on July 16, 1990.
On April 2, 1991, the petitioner, represented by public defender Margaret Moreau, appeared before the court (Thompson, J.) and entered a plea of guilty to the charge of escape in the first degree for which he received a one year sentence pursuant to the plea bargain agreement.[1]
The petitioner filed an application for a writ of habeas corpus on June 6, 1991. A hearing on this habeas corpus petition was held on August 27, 1991 before this court. Following the hearing, the petitioner filed a post-trial memorandum on October 1, 1991, and the respondent filed its post-trial memorandum on October 10, 1991.
"An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty. . . ." General Statutes 52-466. An application for a writ of habeas corpus challenges the authority of one who deprives another of his liberty, McClain v. Robinson, 189 Conn. 663, 668,457 A.2d 1072 (1983), and provides a special and extraordinary legal remedy for illegal detention. Reed v. Reincke, 155 Conn. 591,594, 236 A.2d 909 (1967). "The writ is accorded constitutional status by article I, 9 of the Federal Constitution and article I, 12 of the Connecticut Constitution." A.P. Spinella, Connecticut Criminal Procedure, pp. 822-823.
A. Deliberate Bypass.
"[H]abeas corpus cannot be used as an alternative to a direct appeal. . . ." Valeriano v. Bronson, 209 Conn. 75, 78-79, 546 A.2d 1380 (1988). Moreover, the petitioner is required to allege and prove that he or she did not deliberately bypass the orderly procedure of direct appeal. Nardini v. Manson,207 Conn. 118, 123, 540 A.2d 69 (1988). However, the Connecticut Supreme Court has softened the harshness of the deliberate bypass rule by "requiring that the record before us must disclose some reasonable basis for concluding that a convicted person has intentionally, understandingly and voluntarily waived CT Page 1004 his statutory right to appeal." D'Amico v. Manson, 193 Conn. 144,146-47, 476 A.2d 543 (1984); see Gallard v. Bronson,204 Conn. 330, 334 A.2d 1192 (1987).
In the petitioner's amended petition and his pre-trial and post-trial memoranda of law, the petitioner claims that at the time of his sentencing, the petitioner was not advised of his right to appeal, nor was he advised of this right by his public defender. Because the record contains no affirmative evidence that the petitioner was aware of his right to appeal a conviction after a guilty plea, the court finds, in this case, that the petitioner did not intend to deliberately bypass the orderly procedure of a direct appeal.
In addition, "[t]he deliberate bypass rule is . . . no jurisdictional obstacle where a petitioner alleges ineffective assistance of counsel. Nardini, supra, 123. In State v. Leecan, 198 Conn. 517, 541-42 (1986), cert. denied, 476 U.S. 1184,106 S.Ct. 2922, 91 L.Ed.2d 550 (1986), the Connecticut Supreme Court decided to permit review of all claims of ineffective assistance of trial counsel in habeas corpus proceedings. See also Valeriano v. Bronson, supra, 85. (wherein court determined that "any claim involving ineffective assistance of . . . counsel automatically satisfies the deliberate bypass requirement.") For those reasons, the petitioner's claim of ineffective assistance of counsel is not barred by the deliberate bypass rule.
B. Acceptance of the Plea — Lack of Factual Basis.
The petitioner first alleges in his petition that the canvassing court accepted the petitioner's plea of guilty to the crime of escape in the first degree pursuant to General Statutes53a-169 even though the petitioner's conduct was not proscribed by that statute. The essence of the petitioner's claim is that his plea must be vacated because it was not made voluntarily, intelligently or knowingly in that it lacked a factual basis. The petitioner has, however, failed to brief this issue. "Issues not briefed are considered abandoned." `Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court . . .""' State v. Ramsundar, 204 Conn. 4, 16, 526 A.2d 1311 (1987) quoting Hayes v. Smith, 194 Conn. 52, 66 n. 12, 480 A.2d 425 (1984); Cheney v. Strasburger, 168 Conn. 135, 142, 357 A.2d 905 (1975).
Notwithstanding the failure to brief that issue, the court will consider the merits of the petitioner's claim. Practice Book 713 states that "[t]he judicial authority shall not accept a plea of guilty unless he is satisfied that there is a factual CT Page 1005 basis for the plea." However, "by electing to proceed by a habeas corpus action rather than by appeal the [petitioner] assumed the burden of proof that his plea of guilty was not voluntarily and intentionally entered." Blue v. Robinson,173 Conn. 360, 371, 377 A.2d 1108 (1977); Williams v. Reinke,157 Conn. 143, 147, 249 A.2d 252 (1968). In the case at bar, the petitioner did not introduce a transcript of the plea canvass given by the court (Thompson, J.) at the time the petitioner entered his plea. As a result, the record fails to disclose that the court incorrectly accepted the petitioner's plea of guilty without an adequate factual basis for that plea. The petitioner has failed to satisfy his burden of proving there was a lack of a factual basis for the petitioner's plea.
The evidence which is before this court, is sufficient to enable the court to conclude that there was a factual basis for the trial court's acceptance of the petitioner's guilty plea. The facts of this case are sufficiently distinguishable from the facts in State v. Lubus, 216 Conn. 402, 581 A.2d 1045 (1990), as discussed, infra, in Section D of this memorandum, for this court to find that there was a factual basis for the trial court's acceptance of the petitioner's guilty plea. The court in Lubus, in its discussion of the term "escape," specifically declined to decide whether "repeated failures to report as scheduled would reasonably support an inference of present or imminent custodial irregularity and thus evidence a violation of General Statutes 53a-169 (a)(2)." Id., 409. Accordingly, the petitioner's reliance on Lubus, based upon the facts of his case, is misplaced.
C. Acceptance of Plea — Waiver of Constitutional Rights.
In his complaint, the petitioner alleges that the canvassing court "accepted the petitioner's plea of guilty without personally addressing the petitioner and determining that he understood the nature of the offenses to which his plea was entered and/or the consequences thereof of his plea." (Petitioner's Amended Complaint dated July 12, 1991). Again, however, the petitioner has not briefed this issue. "Issues not briefed are considered abandoned." `Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court . . .""' State v. Ramsundar, supra, quoting Hayes, supra; Cheney, supra.
Again, notwithstanding this failure, the court will consider the merits of the petitioner's claim. Section 711 of the Practice Book states:
The judicial authority shall not accept the plea CT Page 1006 without first addressing the defendant personally and determining that he fully understands:
 (1) The nature of the charge to which the plea is offered;
(2) The mandatory minimum sentence, if any;
 (3) The fact that the statute for the particular offense does not permit the sentence to be suspended;
 (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and
 (5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
Moreover, "where there has been substantial compliance with [711], such that none of the defendant's constitutionally protected rights has been infringed upon, the failure to comply with each and every requirement of [711] does not automatically require the vacating of the defendant's plea." State v. Godek,182 Conn. 353, 360, 438 A.2d 114 (1980). The fundamental constitutional rights of a person entering a guilty plea that must be protected are: (1) the privilege against compulsory self-incrimination guaranteed by the fifth amendment to the United States Constitution and made applicable to the states by the fourteenth amendment; (2) the right to trial by jury; and (3) the right to confrontation. Tyson v. Warden, 24 Conn. App. 729,734, 591 A.2d 397 (1991), citing Boykin v. Alabama,395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Thus, "in order for a guilty plea to be knowingly, voluntarily and intelligently made, a trial court must advise a defendant that his plea operated as a waiver of these three fundamental constitutional rights." Tyson, supra, citing State v. Badgett, supra, 418.
"By electing to proceed by a habeas corpus action rather than by appeal the defendant assumed the burden of proof that CT Page 1007 his plea of guilty was not voluntarily and intelligently entered." Bluer supra, 371; Williams, supra, 147. In the present action, the petitioner did not introduce a transcript of the plea canvass given by the court (Thompson, J.) when the petitioner sought to plead guilty. Because there is nothing in the record to show that the petitioner did not understand the nature or consequences of his plea, the petitioner has failed to sustain his burden of proving the aforementioned allegations.
Further, the plaintiff has not specifically alleged any infringement of one of his three enumerated constitutional rights nor has he provided evidence that the judicial authority failed to comply substantially with the requirements of Practice Book 711. If any one of these right were not waived by the defendant, his plea of guilty could not stand. See Tyson, supra. The court cannot automatically vacate the finding of the trial court when there is no evidence submitted by the petitioner that his rights were violated.
D. Ineffective Assistance of Counsel.
The fundamental "right to counsel is the right to the effective assistance of counsel." McMann v. Richardson,397 U.S. 759, 771 n. 14, 25 L.Ed.2d 763, 90 S.Ct. 1441 (1970); Johnson v. Commissioner, 218 Conn. 403, 589 A.2d 1214 (1991); Simeon v. Stoughton, 184 Conn. 547, 440 A.2d 210 (1981). the right to effective assistance of counsel at trial is guaranteed to a criminal defendant by the sixth and fourteenth amendments to the United States Constitution and article first, section of the Connecticut Constitution, see Strickland v. Washington,466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), rehg. denied, 467 U.S. 1267, 82 L.Ed.2d 864, 104 S.Ct. 3562 (1984); Fair v. Warden, 211 Conn. 398, (1989), cert. denied,110 S.Ct. 512 (1989), and on direct appeal, see Evitts v. Lucey, 469 U.S. 387,83 L.Ed.2d 821, 105 S.Ct. 830 (1985); Valeriano v. Bronson, supra.
The standard to be used by the court in determining ineffectiveness is "whether counsel's conduct so undermined the proper functions of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, supra, 686. In addition, "ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." Strickland, supra, 693.
In Strickland, supra, the United States Supreme Court set forth a two-prong test for establishing an ineffective assistance of counsel claim: CT Page 1008
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
Id., 687. The Strickland court further stated that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., 687-88. In addition, the defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694.
"Judicial scrutiny of counsel's performance must be highly deferential." Id., 689; Fair, supra, 403; Levine v. Manson,195 Conn. 636, 640, 490 A.2d 82 (1985).
 It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, that is, the defendant must overcome circumstance, the challenged action "might be considered sound trial strategy." (Citation omitted). CT Page 1009
Strickland, supra, 689; see also Fair v. Warden, supra, 403-04 Levine v. Manson, supra, 640. Thus, "a convicted defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, supra, 690; see also Fair v. Wardin, supra, 402-03; State v. Talton, 197 Conn. 280, 297, 97 A.2d 35 (1985); State v. Rivera,196 Conn. 567, 570, 494 A.2d 570 (1985); State v. Tirado,194 Conn. 89, 91-92, 478 A.2d 606 (1984). In the present action, the petitioner identifies his counsel's act of advising him to plead guilty to a charge of escape in the first degree, in light of the decision of the Connecticut Supreme Court in State v. Lubus, supra, not to have been the result of reasonable professional conduct. In State v. Lubus, supra, defendant Lubus, after receiving probation, was transferred to a community residence program that would permit him to live in his own home pursuant to General Statutes 18-100(e). Id., 405. As part of this program, Lubus was required to report as scheduled to a supervisory officer. Id. After failing to appear for one appointment, Lubus was arrested and charged with escape under General Statutes 53a-169(a)(2). Id. Lubus argued that his conduct did not constitute escape under that statute. Id.
In interpreting the term "escape," the court held that:
 53a-169 (a)(2) does not penalize as an "escape" a single failure to report to a supervisor. We conclude, rather, that 53a-169 (a)(2) employs the term "escape" to contemplate an unauthorized departure from, or failure to return to, a "community residence." We need not decide today whether, at some juncture, repeated failures to report as scheduled would reasonably support an inference of present or imminent custodial irregularity and thus evidence a violation of 53a-169 (a)(2). A single failure to report cannot, however, reasonably be construed as an unauthorized departure or failure to return.
Id., 409. In the present action then, in order for the petitioner to satisfy the first prong of the Strickland test, he must show that the failure of his attorney to interpret State v. Lubus, supra, as holding that the petitioner's actions do not constitute escape was not reasonable professional conduct. CT Page 1010
Attorney Moreau's advice to the petitioner to plead guilty constituted reasonable professional conduct. The record reveals that, during the habeas corpus hearing, Attorney Moreau testified that she was familiar with the decision in State v. Lubus, supra, and felt that the petitioner's case was sufficiently distinguishable from Lubus and such that he would not prevail should the case reach trial. See (Respondent's Post-Trial Memorandum of Law, p. 14). The latter view is reasonable when comparing the Lubus case with the present action. For instance, Lubus involved a single missed meeting by Lubus whereas the petitioner in the present action had missed at least three months worth of required reportings. In addition, the supervising officer made numerous telephone calls and visits to the community residence and was still unable to contact the petitioner.
Another distinguishing factor between the two cases is in the nature of the custodial status. The court in Lubus found that "escape" as defined "in 53a-169 (a)(2) was intended to incorporate misconduct commonly understood as arising out of unauthorized departures from custodial restraints." Id., 408. In Lubus, the defendant merely missed a meeting with his supervising officer but there was no allegation that he had left his community residence. Id., 405. In the case at bar, the petitioner not only missed numerous scheduled appointments but also could not be contacted at his community residence. For those reasons the status of the petitioner's custody is distinguishable from that of Lubus.
In addition to the distinguishing factors between these cases, there was evidence that the plea bargain offered by the State of a one year concurrent sentence was much more favorable to the petitioner than the usual offer by the state of a one year suspended sentence after six months consecutive to one's current sentence.
The distinguishing factors between the present action and the fact in State v. Lubus, coupled with the unusually lenient sentence offered by the state rendered Attorney Moreau's advice to the petitioner to plead guilty to the charge of escape within the range of reasonable professional conduct. Because the petitioner has failed to establish that trial counsel's performance was deficient, as required by the first prong of the Strickland test, the petitioner's ineffective assistance of counsel claim must fail.
For the foregoing reasons, the petitioner's application for a writ of habeas corpus is denied.
SCHALLER, JUDGE CT Page 1011