STATE OF NORTH CAROLINA v. DONNIE LEON WAY

No. 51

(Filed 17 May 1979)

**Rape § 6— withdrawn consent—jury instructions improper**

    In a prosecution for second degree rape the trial court erred in instructing the jury that "consent initially given could be withdrawn and if the intercourse continued through use of force or threat of force and that the act at that point was no longer consensual this could constitute the crime of rape," since, under the court's instruction, the jury could have found defendant guilty

of rape if they believed the victim had consented to have intercourse with defendant and in the middle of *that* act changed her mind, but the concept of withdrawn consent ordinarily applies to those situations in which there is evidence of more than one act of intercourse between the prosecutrix and the accused.

ON defendant's petition for discretionary review of the un-published opinion of the Court of Appeals, 38 N.C. App. 628, 248 S.E. 2d 474 (1978) (*Webb, J.*, concurred in by *Vaughn* and *Arnold J.J.*), which found no error in the judgment of *Thornburg, J.*, entered in the 3 January 1978 Criminal Session of MECKLENBURG Superior Court.

The defendant was charged, in an indictment proper in form, with second degree rape.

At trial the evidence for the State tended to show the following:

On the evening of 16 May 1977 the defendant called Beverly Michelle Hester on the phone and asked her to go out with him on a date the following day. Beverly and the defendant had previously been introduced. They had talked on the phone regularly but had never before gone out together.

At about 2:30 p.m. on 17 May 1977 the defendant and his friend Michael Stinson picked up Beverly and her friend Patricia Simpson at the Hester home. They all went to Michael's apartment. The defendant, Michael and Patricia drank some beer and wine and smoked some marijuana; Beverly did not. The television was on, and there was loud music playing on the stereo.

At about 6:00 p.m. the defendant asked Beverly to go upstairs with him because he had something to show her. She went upstairs to a bedroom and sat on the bed. The defendant closed the door. At that point he tried to take off Beverly's pants. She said no, and the defendant replied that she had ten minutes to take her clothes off or he would beat her. Beverly started walking toward the door, and the defendant hit her in the face with his hand. She fell on the bed crying and tried to call her friend Patricia "but I [Beverly] knew she wouldn't hear me because of the loud music." The defendant then said that "by the time [Patricia] got up the steps my [Beverly's] head would be through the wall." The defendant stood over Beverly with his arm

raised as if he were going to hit her again; Beverly undressed because she was scared.

The defendant knocked Beverly on the bed and forced her to have anal intercourse. The defendant then made her perform oral sex on him "or he would kill me [Beverly]." Thereafter he made Beverly have sexual intercourse with him even though she begged him not to because she was a virgin. During the course of the sexual act Beverly started shaking and complaining of severe stomach pains. The defendant became scared. He got off her and called her friend Patricia. Patricia came to the bedroom and dressed Beverly, who was crying and kept asking to be taken to the hospital. Beverly testified she could not tell her friend what had happened because the defendant was constantly present and she was afraid of him.

The defendant, Michael and Patricia all took Beverly to the hospital, and Beverly's parents were called. Beverly first reported that she had been raped when she saw her mother at the hospital.

Dr. Chambers, who examined Beverly on the night of 17 May 1977, testified that there were bruises and puffiness on the right side of her face. The doctor also stated that "vaginal conditions showed evidence of recent trauma. The hymen ring had been torn recently."

The evidence for the defendant tended to show the following:

The defendant had met Beverly Hester in January of 1977. She had gotten defendant's phone number from a friend of his and had called him nearly every day. Mrs. Alexander, defendant's mother, testified that she remembered "a Beverly" calling her home and asking for the defendant. The defendant stated that Beverly had set up the date for 17 May 1977.

While they were at Michael's apartment on 17 May 1977, the defendant said "come on, let's go upstairs" to Beverly, and she went with him. While in the bedroom they talked for about thirty or forty minutes. Beverly then took off her clothes, the defendant took off his clothes, and they had sexual intercouse. Beverly had told the defendant she was a virgin, but the defendant thought she was "just kidding."

During the act of intercourse, Beverly started yelling about stomach pains, so the defendant asked Patricia to come upstairs

to help her. Thereafter, they all took Beverly to the hospital. Defendant denied ever having slapped Beverly, and he denied forcing her to have intercourse with him.

The judge submitted the charge of second degree rape to the jury, and they found the defendant guilty. He was sentenced to imprisonment for ten years. The Court of Appeals found no error in defendant's trial, and this Court granted his petition for discretionary review.

*Grant Smithson, Assistant Public Defender, for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Rudolph A. Ashton, III for the State.*

COPELAND, Justice.

The defendant contends the trial court erred in its instruction to the jury on withdrawn consent. We agree; therefore, the defendant must be granted a new trial.

After the jury's deliberations had begun, they returned to the courtroom and asked the judge "whether consent can be withdrawn." The court then instructed them that "consent initially given could be withdrawn and if the intercourse continued through use of force or threat of force and that the act at that point was no longer consensual this would constitute the crime of rape."

It is true that consent can be withdrawn. This concept ordinarily applies, however, to those situations in which there is evidence of more than one act of intercourse between the prosecutrix and the accused. "If the particular act of intercourse was without her consent, the offense is rape without regard to the consent given for prior acts to third persons or the defendant." R. ANDERSON, 1 WHARTON'S CRIMINAL LAW AND PROCEDURE § 302 (1957). *See also State v. Long,* 93 N.C. 542 (1885).

It is uncontroverted that there was only one act of sexual intercourse involved in this case. Under the court's instruction, the jury could have found the defendant guilty of rape if they believed Beverly had consented to have intercourse with the defendant and in the middle of that act, she changed her mind. This is

State v. Way

not the law. If the actual penetration is accomplished with the woman's consent, the accused is not guilty of rape, although he may be guilty of another crime because of his subsequent actions. The court's instruction on this matter was erroneous, entitling the defendant to a new trial.

For the foregoing reason, the defendant is granted a

New trial.