STATE OF CONNECTICUT *v.* SEAN SIERING
(12008)

O'CONNELL, FOTI and HEIMAN, Js.

---

Argued November 8, 1993—decision released July 19, 1994

*Kevin A. Randolph,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Timothy J. Liston,* senior assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes

§ 53a-70 (a) (1).[1] The jury acquitted the defendant of unlawful restraint in the first degree. The defendant claims that the trial court improperly precluded him from introducing evidence of the victim's prior sexual conduct and also improperly instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim first met about 9:30 p.m. on February 8, 1992, in the Lakeshore Pub in East Hampton. The Lakeshore Pub is a small bar and lounge with a dance floor and pool table. After their initial meeting, the defendant and victim danced together, shared a kiss and then spent the evening talking in one of the pub's booths. The two decided to leave at about 1 a.m. Because the defendant lacked transportation, the victim agreed to drive him to the Heidelberg Inn where he lived in a rented room on the second floor. Upon arriving at the inn, the victim accompanied the defendant to his room where she hoped either to obtain the defendant's phone number or make arrangements for a future date. Immediately upon entering his room, the defendant forcibly kissed the victim and pushed her onto his bed. The victim tried to leave but the defendant became aggressive and held her on the bed against her will. In the struggle that followed, the defendant pulled off the victim's clothes and had sexual intercourse with her by force. Throughout the assault, the victim was yelling, screaming and fighting. Eventually, she broke free, grabbed her clothes and rushed back to the Lakeshore Pub and called the police. As a result of the assault, the victim suffered injuries to her face, neck, wrists and legs.

---

[1] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

The defendant's version of the critical events was that he and the victim were engaged in mutually consensual sexual intercourse when the victim suddenly "snapped and yelled rape."

I

The defendant's first claim implicates General Statutes § 54-86f, commonly known as the rape shield law.[2] This statute provides that evidence of a victim's prior sexual conduct is not admissible unless it qualifies under one of four exceptions. The defendant claims that his proffered evidence qualifies under the first exception because it was "offered . . . on the issue of whether the defendant was, with respect to the victim, the source of . . . injury." The defendant attempted to show that the injuries to the victim's face, neck, wrists and legs did not result from an assault by him but instead were the product of intercourse with another person on the day preceding the assault.

[2] General Statutes § 54-86f provides in pertinent part: "In any prosecution for sexual assault under section 53a-70 . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue. of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. *If, after hearing, the court finds that the evidence meets the requirements of this section and the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion.* The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense." (Emphasis added.)

In response to the defendant's motion for permission to introduce evidence of prior sexual intercourse, the trial court conducted the statutorily mandated hearing out of the presence of the jury. The victim was the sole witness called by the defendant. She testified that on the day before the assault she had consensual sexual intercourse with someone other than the defendant but that she had sustained no physical injuries during that contact. The defendant offered no evidence to the contrary. The trial court ruled that the prejudicial effect of the evidence outweighed its probative value and denied the defendant's motion.

In *State* v. *Cassidy,* 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), we held that the rape shield statute was "enacted specifically to bar or limit the use of  . . .  sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material." The defendant did not show how his proffered evidence would tend to demonstrate that he was not the source of the victim's injuries. " 'In light of the fact that  . . .  [the victim] only would have denied the allegations again if she were allowed to testify in front of the jury, it is difficult to perceive any justification for breaking down the barriers of the rape shield statute except to harass and embarrass [the victim] and confuse or mislead the jury.' *State* v. *Williams,* 20 Conn. App. 263, 270, 565 A.2d 1365 (1989)." *State* v. *Kendrick,* 30 Conn. App. 56, 59, 619 A.2d 1 (1993).

It is apparent that on trial the victim would have testified before the jury that none of the injuries that she claims she received from the incident with the defendant were present before the encounter with him. He proffered no evidence establishing that, despite her testimony to the contrary, the victim had been injured prior to her encounter with him. Furthermore, he proffered no evidence as to how consensual sexual con-

tact would have caused injuries of the type suffered by the victim; nor did he show how his proffered evidence would tend to demonstrate that he was not the source of the victim's injuries.

The trial court has broad discretion in ruling on the admissibility of evidence and only upon a showing of a clear abuse of discretion will this court set aside rulings on evidentiary matters. *State* v. *Gray,* 221 Conn. 713, 725, 607 A.2d 391, cert. denied,     U.S.    , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). The trial court did not abuse its broad discretion in ruling that the prejudicial effect of the proposed evidence outweighed its probative value and properly denied the defendant permission to introduce it as evidence at trial.

## II

Additional facts are necessary for the disposition of the defendant's claim that the trial court improperly instructed the jury. At trial, the victim and the defendant gave sharply divergent testimony concerning what transpired in the defendant's room. The defendant testified that they engaged in consensual sexual intercourse until the victim suddenly "snapped and yelled rape." In contrast, the victim insisted that the intercourse resulted from the defendant's use of force and was without her consent from the start. The record does not disclose evidence of any physical or emotional impediment preventing the defendant from discontinuing his sexual activity at any time.

During its deliberations, the jury sent a question to the court.[3] The jury inquiry was "if a person agrees

---

[3] The jury had previously asked: "If once you consent to sexual intercourse and the act has begun (penetration) and one party says to stop and the other party continues does this constitute sexual assault?" The court replied: "Based on the elements of the crime as I just explained them to you, the short answer to your question is no." A colloquy between the court and defense counsel made it clear that the court's answer was based on the fact that the jury question made no reference to the use of force. Shortly after the court's reply the jury returned with the question that we now consider.

to sexual intercourse then changes her mind, withdraws her consent, but is compelled to continue intercourse by use of force, does this constitute sexual assault?'' The court responded in part "if there exists consensual sexual intercourse and the alleged victim changes her mind and communicates the revocation or change of mind of consent and the other person continues the sexual intercourse by compelling the victim through the use of force then it would be sexual assault in the first degree."[4]

The defendant argues that this supplemental instruction was not a correct statement of the law and impaired his constitutional right to prepare a defense, which includes the right to proper jury instruction on the elements of any applicable defense. *State* v. *Miller*, 186 Conn. 654, 660, 443 A.2d 906 (1982). As then instructed, the jury had two alternatives under which it could find the defendant guilty. The jurors could have found that the victim (1) never consented and resisted the defendant from the start or (2) consented but withdrew her consent at some point subsequent to penetration. "When one of two alternative grounds for conviction would not constitutionally support a guilty verdict, the conviction must be invalidated because a general guilty verdict makes it impossible to know

---

[4] The relevant part of the court's supplementary jury instruction was as follows: "Your question once again is 'If a person agrees to sexual intercourse then changes her mind, withdraws her consent, but is compelled to continue intercourse by use of force, does this constitute sexual assault?' My answer to [your question] is if there exists consensual sexual intercourse and the alleged victim changes her mind and communicates the revocation or change of mind of consent and the other person continues the sexual intercourse by compelling the victim through the use of force then it would be sexual assault in the first degree.

"This is not just someone withdrawing their consent but it's a withdrawal of consent communicated to the other and then the sexual intercourse continues by compelling the victim through the use of force. So it's not just a withdrawal of consent, it's also a withdrawal of consent communicated to the other person and then a compelling use of force to continue sexual intercourse."

whether the jury relied on the impermissible ground." *State* v. *Jemison,* 35 Conn. App. 1, 6, 643 A.2d 1287 (1994); see also *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969). The first alternative presents a common sexual assault scenario well established in law. The defendant, however, challenges the constitutional validity under the due process clause of the second alternative, i.e., consent withdrawn after penetration. Accordingly, unless the trial court's instruction on the second alternative was correct in law, we would be required to reverse the conviction. *State* v. *Jemison,* supra, 7.

The defendant argues that if there is consent at the moment of penetration, the subsequent withdrawal of consent and continuation of intercourse accompanied by force cannot convert consensual intercourse into sexual assault. The defendant bases his argument on General Statutes § 53a-65 (2),[5] which provides the definition of "sexual intercourse" applicable to the General Statutes. Although the defendant concedes that § 53a-65 (2) is unambiguous, he nevertheless invites us to consider its legislative history because he argues that it will highlight the error in the court's supplemental instruction.

The defendant contends that Public Acts 1975, No. 75-619 (P.A. 75-619), redefined sexual intercourse. Prior to 1975, sexual intercourse was defined by General Statutes (Rev. to 1975) § 53a-65 as having "its ordinary meaning and *occurs upon any penetration* . . . ." (Emphasis added.) Public Act 75-619 changed the definition in part to provide: *"Penetration, however slight, is sufficient to*

---

[5] General Statutes § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

*complete vaginal intercourse . . . .''* (Emphasis added.) General Statutes § 53a-65 (2). The defendant concedes that the ''ordinary meaning'' of sexual intercourse contemplates a continuous act of penetration but contends that we must assume that the legislature changed the language for a reason. *Turner* v. *Turner,* 219 Conn. 703, 719, 595 A.2d 297 (1991). The reason for this change, the defendant asserts, is that the legislature no longer intended to define intercourse as a continuing act of penetration, thereby making it legally impossible for either party to revoke consent once penetration occurs.

The fallacy in the defendant's argument is that the 1975 legislature did not make only this change but rather overhauled the entire sex offense portion of the General Statutes, part VI of chapter 952.[6] The legislative history reveals that the purpose of changing the definition of sexual intercourse from ''having its ordi-

---

[6] Prior to 1975, the penal code treated forcible vaginal sexual intercourse and forcible anal or oral sexual intercourse in separate but parallel sections. Forcible vaginal intercourse was labeled rape and was divided into two degrees. General Statutes (Rev. to 1972) §§ 53a-72 and 53a-74. Forcible anal or oral intercourse was labeled ''deviate sexual intercourse,'' and was likewise divided into two degrees. See General Statutes (Rev. to 1972) §§ 53a-75 and 53a-76; see *State* v. *Scott,* 11 Conn. App. 102, 115, 525 A.2d 1364, cert. denied, 204 Conn. 811, 528 A.2d 1157 (1987). Public Act 75-619, inter alia, repealed the existing statutory classification of varying degrees of rape and deviate sexual intercourse in lieu of a statutory classification based on varying degrees of sexual assault. See General Statutes §§ 53a-70 through 53a-73a. This revision reflected the adoption under P.A. 75-619 of a gender neutral definition of ''sexual intercourse,'' which included vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex.

Public Act 75-619 also altered the rape statute by deleting the element of ''forcible compulsion,'' which required the state to prove that physical force overcame earnest resistance by the victim. Now, proof of resistance is no longer required; the use of force or the threat of force is proof enough. General Statutes § 53a-70. Additionally, P.A. 75-619 eliminated as a defense to sexual assault in the second degree the claim of mistake of age. Finally, P.A. 75-619 added the crimes of sexual assault in the first degree with a firearm.

nary meaning" was to include "anal intercourse, fellatio and cunnilingus," none of which had been encompassed under the expression "ordinary meaning" of sexual intercourse. See 18 S. Proc., Pt. 7, 1975 Sess., pp. 3214–27.

We construe the statutory reference to penetration as establishing the minimum amount of evidence necessary to prove that intercourse has taken place. The statute does not read that "intercourse is complete" upon penetration; rather, it provides that "penetration, however slight, [is sufficient] to complete . . . intercourse." *State* v. *Mackor,* 11 Conn. App. 316, 319–20, 527 A.2d 710 (1987). We do not construe this to mean that only the initial penetration constitutes intercourse. The defendant's argument would mean that the act that commences intercourse is also the act that simultaneously concludes intercourse.

It is axiomatic that statutes are not to be interpreted to arrive at bizarre or absurd results. *Scrapchansky* v. *Plainfield,* 226 Conn. 446, 453, 627 A.2d 1329 (1993). The defendant's construction of the statute would mean that if intercourse is continued by force after the victim withdrew consent, it would not constitute sexual assault unless the victim, upon revoking consent and struggling against the defendant, succeeds in momentarily displacing the male organ, followed by an act of repenetration by the defendant. See *State* v. *Way,* 297 N.C. 293, 254 S.E.2d 760 (1979).

The absurdity of this construction is demonstrated not only by the difficulty involved in the close evidentiary determination required but also because it protects from prosecution a defendant whose physical force is so great or so overwhelming that there is no possibility of the victim's causing even momentary displacement of the male organ. Furthermore, the defendant's argument does not furnish us with terminology to

describe the state of continued presence of the male organ in the female organ following initial penetration. The defendant's argument would not permit the nomenclature of sexual intercourse to be applied to that situation.[7]

Despite this absurdity, a review of the limited case law of sister states reveals that three jurisdictions[8] appear to support the defendant's argument. One jurisdiction, however, rejects it. Because this case presents an issue of first impression in Connecticut, we consider how other jurisdictions have resolved this question.

In support of his claim, the defendant cites *State* v. *Way,* supra, 297 N.C. 293, in which the trial court had instructed the jury that intercourse continued by force after withdrawal of consent became rape from the point that it was no longer consensual. The North Carolina Supreme Court reversed the trial court and held that consent could be withdrawn only if there was more than one act of intercourse and the consent was withdrawn between the acts. Id. This decision is not persuasive because it contains no analysis or explanation but is merely a bald statement that the trial court was wrong.

The case of *People* v. *Vela,* 172 Cal. App. 3d 237, 218 Cal. Rptr. 161 (1985), likewise supports the defendant's position. Interpreting a statutory scheme similar to ours, the Court of Appeals for the Fifth Appellate District of California held that if a woman initially consents to sexual intercourse but later withdraws her consent, and the male forcibly continues the act without interruption, no rape occurs. In support of this result, the court relied on the principle that the "essen-

[7] We note General Statutes § 1-1 (a), which provides in pertinent part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."

[8] In one of those cases, however, the discussion of this issue is arguably dicta and thus will not be addressed here. *Battle* v. *State,* 287 Md. 675, 414 A.2d 1266 (1980).

tial guilt of rape" consists of the "outrage to the feelings of the female." Accordingly, the court held that the outrage to the feelings of a female who initially consents to sexual intercourse but who during the same act withdraws that consent "is not of the same magnitude as that resulting from initial non-consensual violation of [the victim's] womanhood." We reject this reasoning as archaic and unrealistic.

On the other hand, the Maine Supreme Court in *State* v. *Robinson,* 496 A.2d 1067 (Me. 1985), concluded that continuation of intercourse by compulsion after withdrawal of consent constituted rape. The Maine statute, however, defines "sexual intercourse" as "*any* penetration of the female sex organ by the male sex organ." Me. Rev. Stat. Ann. tit. 17-A, § 251 (1) (B) (1983). Thus, the reasoning of the Maine court, while appealing, reflects in part that state's statutes, which are not identical to our own.

Due to the paucity of reliable authority from other jurisdictions, we must resolve this appeal on the basis of our own best judgment of the meaning of our statute interpreted in the light of the common sense of the situation before us. It is a basic principle of law that common sense is not to be left at the courtroom door; *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985), *State* v. *Perez,* 10 Conn. App. 279, 291, 523 A.2d 508, cert. denied, 203 Conn. 810, 528 A.2d 524 (1987); and "courts will not pretend to be more ignorant than the rest of mankind." *Maseline* v. *New York, N. H. & H. R. Co.,* 95 Conn. 702, 709, 112 A. 639 (1921). "In anybody's everyday lexicon, continued penetration of the female sex organ by the male sex organ . . . is factually 'sexual intercourse' "; *State* v. *Robinson,* supra, 496 A.2d 1069; and if intercourse is without consent and accomplished through force, it constitutes sexual assault.

We conclude that the trial court's supplemental jury instruction was a correct statement of the law.

The judgment is affirmed.

In this opinion the other judges concurred.