## Commonwealth v. Stauffer

C.P. of Lawrence County, No. 176 of 2014, CR

*Jonathan R. Miller*, for Commonwealth.

*David H. Acker*, for defendant.

MOTTO, *P.J.*, Oct. 21, 2014—Before the court for disposition is the petition for writ of habeas corpus filed on behalf of the defendant, Justin Stauffer, which contends that the Commonwealth failed to establish a *prima facie* case as to each of the charges filed against the defendant. The defendant contends that because the victim testified that on the date of the alleged rape, she initially consented to engage in unprotected sexual intercourse with defendant, including the act of penetration, there is insufficient evidence to establish a prima case for each of the charges. The dispositive issue is whether the Commonwealth has net its burden of providing evidence to support a *prima facie* case for rape by forcible compulsion, sexual assault and indecent assault, where the victim withdrew her consent after penetration, and the continuation of intercourse was

accompanied by force and without consent.

This case arises from an alleged sexual assault that occurred at the defendant's residence with a female victim, Gavynne Hehman. The victim testified at the preliminary hearing that she had been in a relationship with the defendant since April 2013. According to the victim's testimony, on the day of this incident the defendant had picked her up at her house and took her to his residence at 946 cleland Mill Road in North Beaver Township, Lawrence County. The victim stated that she did not know the exact date of the assault, but was sure that it was a few days before Halloween in October 2013 The victim testified that once they arrived at the defendant's residence they went to the defendant's bedroom and sat down on the bed together. The defendant indicated that he wanted to have sex with the victim and she refused and said that she was not on birth control and she did not want to become pregnant. According to her testimony, the defendant kept asking her to have sex until she finally relented and said she would, but only if the defendant wore a condom. The defendant stated that he did not like condoms and would not wear one. After some persuasion by the defendant, however, the victim agreed to sexual intercourse with the defendant on the condition that he would stop and withdraw prior to ejaculation. According to the victim, the defendant agreed to withdraw before ejaculation. The victim stated that during the intercourse, the defendant stated that he was about to ejaculate. At this point, the victim told him to stop and reminded him that had agreed to withdraw. According to the victim's testimony, when she told the defendant to stop and withdraw he refused and grabbed her arms and wrists and held them behind her back with one hand and placed his other hand on her upper back and forced her down onto the bed. The victim stated that she was bent over the bed with the victim

behind her unable to move because he was holding her down. According to her testimony, the defendant stated "No. I'm not going to stop." and that he was going to ejaculate inside her whether she wanted him to or not. The victim tried to move and pull away from the defendant but the defendant held her down and she was unable to move. The victim testified that the defendant held her down and continued the intercourse to the point of ejaculating inside of her and then released her. The victim testified that after the defendant released her she got up and got dressed and walked upstairs and spoke with the defendant's family, but that she did not tell them what had happened. The victim testified that when the defendant drove her home later that evening she asked him why he held her down when she did not want to continue having intercourse and he replied that that it was not a big deal and not to worry about it because she was not going to get pregnant. The victim stated the defendant told her not to tell anyone about what happened.

The victim further testified that she found out she was pregnant shortly after the assault and told her parents that she was pregnant in November 2013, right before Thanksgiving. She stated that she did not inform her parents about the assault at that time because she was still in a relationship with the defendant — and was afraid that he would harm her if she told anyone. According to the victim's testimony on cross examination, after this incident she continued having consensual sexual intercourse with the defendant up until the time she ended their relationship in December 2013. The victim stated that her relationship with the defendant ended around Christmas when she first told her parents about the sexual assault. The victim testified that after she ended her relationship with the defendant he continued to try and contact her by calling her and showing up at her house.

On January 8, 2014 the victim contacted the state police and was interviewed by Pennsylvania State Trooper Harry Gustafson, Jr. about the sexual assault. Based on victim's statement, the defendant was charged with rape by forcible compulsion (18 Pa.C.S. §3121(a)(1)), sexual assault (18 Pa.C.S. §3124.1), unlawful restraint (18 Pa.C.S. §2902(a)(1)), and indecent assault (18 Pa.C.S. §3126(a)(2)). A preliminary hearing was held on February 20, 2014 before Magisterial District Judge Jerry Cartwright. At the conclusion of the hearing, District Judge Cartwright bound all the charges against the defendant over to this court except unlawful restraint. The defendant filed a petition for writ of habeas corpus on May 9, 2014 challenging the sufficiency of the commonwealth's evidence. At the habeas corpus hearing, the Commonwealth presented the notes of testimony of the preliminary hearing. No additional evidence was offered by either party.

Filing a petition for a writ of habeas corpus is the appropriate method by which a defendant may challenge a pre-trial finding that the Commonwealth has presented sufficient evidence to establish a *prima facie* case. *Commonwealth v. Karlson*, 674 A.2d 249 (Pa. Super. 1996); *see also Commonwealth v. McBride*, 528 Pa. 153, 595 A.2d 589 (1995); *Commonwealth v. Carmody*, 799 A.2d 143 (Pa. Super. 2002). In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a *prima facie* case that the defendant committed the crime with which he or she is charged. *Comm v. Hock*, 556 Pa. 409, 728 A.2d 943 (1999). The Commonwealth must satisfy this evidentiary burden by presenting evidence that established a crime was committed and that there is a probability that the Defendant committed the crime. *Commonwealth v. Fox*, 422 Pa. Super. 225, 619 A.2d 327 (1993). The Commonwealth establishes a *prima facie* case

by offering some proof to establish each material element of the offense as charged. *Commonwealth v. Owen*, 397 Pa. Super. 507, 580 A.2d 412 (1990). The Commonwealth is not required to prove this by the "beyond a reasonable doubt" standard; however, the Commonwealth must satisfy a standard of "sufficient probable cause" that the accused has committed the offense. *Commonwealth v. Prosdocimo*, 479 A.2d 1073 (Pa. Super. 1994).

The Commonwealth meets the burden of establishing a *prima facie* case when it submits evidence that, if accepted as true, would warrant a trial judge to allow the case to go to a jury. *Commonwealth v. Marti*, 779 A.2d 1177 (Pa. Super. 2001). Evidence must be presented concerning each element of the crime charged. *Id.* Such evidence must be viewed in the light most favorable to the Commonwealth. *Id.* Furthermore, the Commonwealth is entitled to all reasonable inferences that can be drawn from the evidence presented. *Id.* The weight or credibility of the evidence is not at issue during the preliminary hearing. *Id.*

Count 1 of the Information charges the defendant with rape by forcible compulsion in violation of §3121(a)(1) of the crimes code. This offense requires that the defendant engaged in sexual intercourse with a complainant by forcible compulsion. Forcible compulsion is defined as compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. 18 Pa.C.S. §3101. It is specifically alleged that the defendant engaged in sexual intercourse with the victim by forcible compulsion in that he held the victim's arms behind her back and held her down with a hand on her back and continued the sexual intercourse with her after she withdrew consent and told him to stop. Count 2 charges sexual assault in violation of 3124.1 of the crimes code. Sexual assault requires proof that the defendant engaged

in sexual intercourse with a complainant without the complainant's consent. 18 Pa.C.S. §3124.1 It is alleged that the defendant held the victim down and continued sexual intercourse with the victim after she withdrew consent and against her will. Count 3 of the information charges the defendant with indecent assault by forcible compulsion, which requires proof that defendant had indecent contact with the complainant, caused the complainant to have indecent contact with the defendant or intentionally caused the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the defendant or the complainant and the defendant did so by forcible compulsion. 18 Pa.C.S. §3126(a)(2) The Information alleges that the defendant had indecent contact with the victim by continuing with sexual intercourse to the point of ejaculation after she withdrew consent for the contact.

In the instant case, the victim testified that she consented to sexual intercourse with the defendant on the condition that the defendant stop and withdraw before ejaculation. The Commonwealth contends that while the victim and defendant were engaging in consensual sexual intercourse, the victim clearly communicated her withdrawal of consent prior to the defendant ejaculating inside of her. The defendant held her down by force and continued with the intercourse after she told him to stop. Thus, the Commonwealth contends that defendant thereby committed the crimes of rape, sexual assault and indecent assault.

The defendant argues in his petition that a review of the facts and circumstances demonstrates that the Commonwealth has failed to carry its burden of establishing a *prima face* case against him. The defendant contends that the victim's testimony at the preliminary

hearing establishes that the defendant and the victim worked together and had been dating for months before and after the date of the alleged rape; that the victim continued dating the defendant for two more months after the alleged sexual assault; that the victim and the defendant were sexually active and engaged in unprotected sexual intercourse both before and after the date of this incident; that on the date of this incident the victim and the defendant engaged in consensual and unprotected sexual intercourse; that they had "accidents" before in which he had not withdrawn prior to ejaculation; and that she did not report being sexually assaulted until she ended her relationship with the defendant approximately two months later. The defendant argues, based on the victim's testimony at the preliminary hearing that at the time of the alleged sexual assault the victim and the defendant consensually engaged in unprotected sexual intercourse, including the act of penetration, and that the victim was aware that unprotected sexual intercourse between her and the defendant could result in her coming into direct contact with the defendant's semen, therefore, the Commonwealth's evidence is insufficient to establish a *prima facie* case with regard to any of the charges.

This case involves a slight deviation from what is generally encountered in sexual assault cases. The crux of this cases centers on the question — when a female who agrees to sexual intercourse then changes her mind and withdraws her consent, but is compelled to continue intercourse by use of force, does this constitute a sexual assault. A review of the case law reveals that this presents an issue of first impression in Pennsylvania, therefore, this court must consider how other jurisdictions have resolved this question. In recent years, the courts in many of our sister states have directly considered whether withdrawal of consent after penetration can constitute a rape, of these

cases, a few courts have held that it does not constitute a rape, with the vast majority of courts finding that if a couple consensually engages in sexual intercourse and one or the other changes his or her mind and communicates the revocation of consent, and the other partner continues the sexual intercourse by compulsion of the party who changes his or her mind, then that circumstance constitutes a sexual assault.

In *State v. Way*, 297 N.C. 293, 254 S.E.2d 760 (N.C. 1979), the Supreme Court of North Carolina was asked to decide whether the trial court erred in answering the jury's question "whether consent can be withdrawn" by instructing that "consent initially given could be withdrawn and if the intercourse continued through use of force or threat of force and that the act at that point was no longer consensual this would constitute the crime of rape." *Id.* at 294, 254 S.E.2d at 761. The North Carolina Supreme Court determined, without any analysis or citation of authority, that the instruction was erroneous, holding that if the actual penetration is accomplished with the woman's consent, the accused is not guilty of rape. *Id.* at 295, 254 S.E.2d at 762. This decision was called into question by the Supreme Judicial Court of Maine in *State v. Robinson*, 496 A.2d 1067 (Me. 1985) when the court held that rape is committed if a couple consensually engages in sexual intercourse and one or the other changes his or her mind, and communicated the revocation of consent, and the other partner continues the sexual intercourse by compulsion.

In *Robinson*, the court was called upon to decide whether the trial judge had provided the jury with a proper instruction after the jury sent the following question to the judge: "if two people began consenting to an act, then one person says no and the other continues-is it rape." *id.* at 1069. The trial court responded by instructing

the jury, "if a couple consensually engages in sexual intercourse and one or the other changes his or her mind, and communicates the revocation or change of mind of the consent, and the other partner continues the sexual intercourse by compulsion of the party who changes his or her mind, then it would be rape." The critical element there is the continuation under compulsion. *Id.* Based on that instruction the defendant was convicted of rape in the first degree. On appeal, the court found no error in the trial court's instructions. Noting its disagreement with the North Carolina Court in the Way opinion, the *Robinson* Court stated that the controlling provision of the Maine Criminal code, as well as common sense, established the correctness of the trial court's instruction. *Id.* at 1069. At trial, there was contradicting testimony about when the victim withdrew her consent to sexual intercourse. The court rejected the defendant's argument that rape occurs only when a male's entry of the female sex organ is made as a result of compulsion. The court found that given the emphasis given on compulsion in Maine's statutory definition of rape, the ongoing intercourse, initiated with the victim's consent, did not become rape merely because she revoked her consent. It became rape if and when the victim submitted to the defendant's sexual assault only because of force or the threat of force. *Id.* at 1070.

In *State v. Bunyard*, 281 Kan. 392, 133 P.3d 14, 33 (2006), the Supreme Court of Kansas ruled as a matter of first impression that the Kansas rape statue proscribes all non-consensual sexual intercourse that is accomplished by force or fear, not just the initial penetration. The court considered whether there was sufficient evidence of rape when the victim was a willing participant up until the time of initial penetration and did not withdraw consent until post-penetration. The Kansas statue defined rape as: (1) Sexual intercourse with a person who does not consent

to the sexual intercourse, under any of the following circumstances: (A) when the victim is overcome by force or fear. Kansas Statues Annotated Section 21-3502 (1996, 2002 Supp.). *Id.* at 398, 133 P.3d at 20. Responding to appellant's contention that the moment of penetration is the crucial point at which to determine the presence or absence of consent, the court concluded that nowhere in its statutory definition of rape or sexual intercourse was it stated that intercourse ended with penetration, but rather that penetration merely establishes a minimum amount of contact necessary to prove the offense. *Id.* at 340, 133 P.3d at 22. The court stated:

> A participant in sexual intercourse may withdraw consent after penetration has occurred. The continuation of sexual intercourse after consent had been withdrawn, and in the presence of force or fear, is rape.

*Id.*

Therefore, the Supreme Court of Kansas found that there was sufficient evidence to find the defendant guilty of rape and ruled that the Kansas statue proscribes all nonconsensual sexual intercourse that is accomplished by force or fear, not just the initial penetration. *Id.* at 346, 133 P.3d at 28.

In *State v. Siering*, 35 Conn. App. 173, 644 A.2d 958 (1994), the intermediate appellate court of Connecticut was asked to address whether the trial court's response to a jury question constituted error. The Jury's question in the case was "if a person agrees to sexual intercourse then changes her mind, withdraws her consent, but is compelled to continue intercourse by use of force, does this constitute sexual assault?" *Id.* at 175, 644 A.2d at 961. The trial court responded that if there exists consensual intercourse and the alleged victim changes her mind and communicates

the revocation or change of mind of consent and the other person continues the sexual intercourse by compelling the victim through the use of force then it would be sexual assault in the first degree. *Id.* The court rejected the defendant's argument that if there is consent at the moment of penetration, the subsequent withdrawal of consent and continuation of intercourse accompanied by force cannot convert nonconsensual intercourse into sexual assault. *Id.* in considering the trial court's answer to the jury question, the Connecticut court of appeals noted that the state rape statue did not suggest that intercourse is complete upon penetration; rather, it provides that penetration, however slight, is sufficient to complete intercourse. *Id.* at 176, 644 A.2d at 962. The appellate court found:

> It is axiomatic that statues are not to be interpreted to arrive at bizarre or absurd results. The defendant's construction of the statute would mean that if intercourse is continued by force after the victim withdrew consent, it would not constitute sexual assault unless the victim, upon revoking consent and struggling against the defendant, — succeeds in momentarily displacing the male organ, followed by a re-penetration by the defendant.

*Id.*

The court concluded that if the act of penetration ends the act of sexual intercourse, it would lead to absurd results not contemplated by the drafters of the rape statues. Therefore, the court held that an act of sexual intercourse that is initially consensual can become sexual assault if one party withdraws consent and the other party continues intercourse. Thus, the trial court's jury instruction was not improper. *Id.* 177, 644 A.2d at 963.

Likewise, in *State v. Baby*, 404 Md. 220, 946 A.2d

463 (2008), the Court of Appeals of Maryland found the analyses conducted by the Maine Court in *Robinson*, the Kansas Court in *Bunyard*, and the Connecticut court in *Siering* to be persuasive and utilized a similar framework in concluding that the Maryland rape statue punishes the act of penetration which persists after the withdrawal of consent. In *Baby*, the victim consented to sexual intercourse with the defendant, but withdrew her consent following penetration and was forced to continue intercourse against her will. During deliberations, the jury asked if a woman consents to intercourse and then changes her mind and the man continues, does that constitute rape. The trial court repeated the definition of rape to the jury and sent them back for further deliberations. The jury returned a verdict of guilty on the charge of rape. Defendant appealed and the appellate court reversed defendant's conviction holding that the trial court erred in refusing to answer the question submitted by the jury regarding whether a sex act initially consented to by the victim can constitute rape is she withdraws consent after penetration has occurred. The appellate court found, based on the language in *Battle v. State*, 287 Md. 675, 686, 414 A.2d 1266, 1270 (1980), that if a woman consents to sexual intercourse prior to penetration and withdraws the consent following penetration, there is no rape. *Baby v. State*, 172 Md. App. 588, 617, 916 A.2d 410, 427 (2007). The State filed a notice of appeal to the Maryland Supreme Court asking the court to definitively decide the question of what constitutes rape, arguing that the appellate court improperly relied on language in *Battle v. State*, *Supra*, to determine that post-penetration withdrawal of consent, coupled with continuation of intercourse through force is not sufficient to constitute the elements required for a finding of rape. The State contended that the relevant language in *Battle*, that "on the other hand, ordinarily it a woman consents prior to penetration and withdraws the consent following

penetration, there is no rape" was dicta and therefore should not have been granted precedential value.

After a thorough analysis of the holdings and conclusions of other state courts' interpretation of their state rape statues, the Maryland Supreme Court found that Maryland's first degree rape statute proscribes post-penetration vaginal intercourse accomplished through force or threat of force and without the consent of the victim, even if the victim consented to the initial penetration. *State v. Baby*, *Supra.* 404 Md. at 240, 946 A.2d at 483. The court found that the court's earlier pronouncement in *Battle* was dicta and therefore need not be followed. *Id.* In overturning the court of appeals, the court found that a woman may withdraw consent for vaginal intercourse after penetration has occurred and that, after consent has been withdrawn, the continuation of vaginal intercourse by force or threat of force may constitute rape. *State v. Baby*, *Supra.* 404 Md. at 260, 946 A.2d at 502. However, the court did find that force of threat of force is an essential element of the crime of rape. *Id.*

Based on the victim's testimony at the preliminary hearing, the court finds that the Commonwealth has established a *prima face* case to the charges of rape, sexual assault and indecent assault. The victim testified that she willingly engaged in sexual intercourse with the defendant, but, during the course of intercourse, she communicated her withdrawal of consent and the defendant continued having intercourse with her by holding her down and holding her hands behind her back. The victim stated that when the defendant held her down she was unable to move and he continued intercourse with her against her will. Under Pennsylvania law, rape by forcible compulsion requires that the defendant engage in sexual intercourse with a complainant by forcible compulsion with forcible

compulsion defined as compulsion by use of physical, intellectual, moral, emotional or psychological force. 18 Pa.C.S. §3121(a)(1). According to the holdings in many of our sister states a woman may withdraw consent for intercourse after penetration has occurred and after consent has been withdrawn the continuation of intercourse by force may constitute rape. *See State v. Way, Supra.; State v. Robinson, Supra.; State v. Bunyard, Supra.; State v. Siering, Supra.; State v. Baby, Supra. See also Davenport v. Vaughn,* 2005 WL 856912 (E.D.Pa. 2005)(applying Pennsylvania law in affirming the defendant's rape conviction, held that the trial court properly rejected the defendant's assertion that only the initial act of penetration counts as penetration under the rape statue, so a withdrawal of consent after sexual intercourse has begun is not rape unless the man withdraws and then penetrations again. The court noted that the requirements for rape in this circumstance are that force is directed against the victim and that the force is sufficient to establish the victim's lack of consent). The defendant's act of holding the victim down and continuing sexual intercourse with her against her will and by force is sufficient to establish a *prima facie* case to rape by forcible compulsion. Furthermore, the victim stated that the defendant ejaculated inside of her causing her to come into contact with his semen against her will and without her consent. Overall, the victim has provided direct and circumstantial evidence that defendant continued having sexual intercourse with her after she withdrew her consent by forcibly holding her down against her will. Moreover, for the same reasons that the court finds a *prima facie* case has been established as to the charge of rape by forcible compulsion, the court also finds that the charges of sexual assault and indecent assault are satisfied by the testimony of the victim relating that she told the defendant to stop and withdraw his penis from her vagina, and he held her down

and continued the intercourse to the point of ejaculating inside of her.

Accordingly, this court finds that based upon the victim's testimony, the evidence provided by the Commonwealth is sufficient to establish a *prima face* case against the defendant as to all charges. Therefore, this court must deny the defendant's petition for writ of habeas corpus for the reasons set forth in this opinion.

## ORDER OF COURT

And now, this 21st day of October, 2014, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that defendant's omnibus pretrial motion in the nature of a motion for writ of habeas corpus is dismissed.

Defendant's motion for discovery is granted and any dispute as to discovery shall be resolved by motion to the court.

The court notes that this case is on the November 2014 trial list.