STATE OF CONNECTICUT *v.* RONALD ALBERT
(AC 15490)

Schaller, Spear and Hennessy, Js.

Argued March 24—officially released October 13, 1998

*Suzanne Zitser*, assistant public defender, with whom was *Martin Zeldis*, assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom were *Anne F. Mahoney*, deputy assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes (Rev. to 1991) § 53a-70 (a) (2)[1] and risk of injury

---

[1] General Statutes (Rev. to 1991) § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with a person under thirteen years of age."

to a child in violation of General Statutes (Rev. to 1991) § 53-21.[2] The defendant's principal claim is that penetration of the labia majora,[3] as charged here, does not constitute sexual assault in the first degree because such penetration does not constitute "vaginal" intercourse as defined in General Statutes (Rev. to 1991) § 53a-65 (2).[4] Consequently, the defendant asserts that the trial court (1) should have granted his motion for a judgment of acquittal because neither the allegation nor the evidence of penetration of the labia majora was sufficient to sustain his conviction, (2) improperly instructed the jury that penetration into the genital opening of the victim constituted vaginal intercourse and (3) improperly precluded cross-examination of the victim's mother with respect to having been sexually molested herself and the victim's therapist with respect to the mother's disclosure of that fact to him. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 2, 1992, the defendant attended a picnic

---

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] Webster's Third New International Dictionary defines labia majora as follows: "Labium . . . [noun, plural] Labia . . . (1) any of the folds at the margin of the vulva. . . ."

[4] General Statutes (Rev. to 1991) § 53a-65 provides in relevant part: "As used in this part, except section 53a-70b, the following terms have the following meanings:

"(1) 'Actor' means a person accused of sexual assault.

"(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. . . ."

at Globe Hollow Pond in Manchester with the victim, N, age three, her mother, her father and her brother. N referred to the defendant, her godfather, as Uncle Ronnie. N testified that while she and the defendant were swimming, the defendant put his hand underneath N's bathing suit and touched her "inside" her "crotch" with his index finger. The touching caused pain and N screamed. After N screamed, the defendant told her not to tell anyone about the touching. When N started crying, her father took her out of the water and brought her to her mother. While she was crying, N said "bad Uncle Ronnie" several times. Physical examinations by physicians shortly thereafter revealed two scrapes on the inside fold of the labia majora that were typical of recent sexual abuse.

The first count of the original information alleged that the defendant "penetrated the vagina" of the victim with his finger or fingers. During the trial, the state amended the first count of the information to allege that the defendant committed sexual assault by penetrating "the labia majora of the genitalia of a three (3) year old girl with his finger or fingers." The jury returned a verdict of guilty on both counts of the information and, after denying the defendant's motion for a judgment of acquittal, the trial court imposed sentence. This appeal followed.

I

A

The defendant's principal contention is that the conviction cannot stand[5] because § 53a-65

---

[5] The trial court instructed the jury that a verdict of not guilty on the sexual assault charge ought to result in a not guilty verdict on the risk of injury charge because the risk of injury count is triggered by the first count. The defendant claims that because of that instruction, the jury found him guilty of risk of injury as a result of the guilty finding on the first count. Therefore, the defendant asserts that a reversal and a directed judgment of acquittal as to the sexual assault charge should result in a judgment of

(2)[6] defines sexual intercourse as, inter alia, "vaginal intercourse . . . ." He asserts that the information does not charge, nor does the evidence prove, vaginal intercourse. Whether digital penetration that is alleged and proven to have occurred between the folds of the labia majora, but not into the vagina, constitutes vaginal sexual intercourse pursuant to § 53a-65 (2) presents a question of statutory construction.

The defendant claims that no interpretation is necessary because the clear wording of the statute requires that vaginal penetration be alleged and proven to support a conviction. We are aware of the rule of statutory interpretation that where the language of a statute is clear and unambiguous, no construction is necessary and a court simply applies the statute as its words direct. See *State* v. *Lubus*, 216 Conn. 402, 407, 581 A.2d 1045 (1990); *State* v. *Mattioli*, 210 Conn. 573, 576, 556 A.2d 584 (1989). We conclude that § 53a-65 (2) is facially ambiguous because it is not clear whether digital penetration of the genital opening is sufficient to complete sexual intercourse or whether such penetration must be into the vagina. Because of this ambiguity, we must turn to recognized principles of statutory construction to ascertain the meaning of the term "sexual intercourse" in the context of this case.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In

acquittal or a new trial on the risk of injury charge. Because we affirm the judgment on the sexual assault charge, the risk of injury conviction is also affirmed.

[6] See footnote 4.

seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We first address the principle that a statute that imposes criminal liability should be strictly construed and ambiguities normally resolved in favor of the defendant. *State* v. *Harrell*, 238 Conn. 828, 832, 681 A.2d 944 (1996); *State* v. *Roque*, 190 Conn. 143, 151, 460 A.2d 26 (1983). Such strict construction, according to the defendant, precludes us from construing vaginal intercourse as including penetration of the labia majora.

Although the defendant asserts that the doctrine of strict construction is dispositive, that doctrine "is only one of the aids which is to be used in the construction of penal statutes. . . . Other aids include such things as the statutory language itself, legislative history where available, the furthering of the policy and purposes fairly apparent from the statute which include the mischief sought to be proscribed and related statutes." (Citation omitted.) *Singh* v. *Singh*, 213 Conn. 637, 646–47, 569 A.2d 1112 (1990). The *Singh* court also stated that "[n]o rule of construction, however, requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope . . . . It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislature]." (Internal quotation marks omitted.) Id., 646. Even where a criminal statute is at issue, our Supreme Court has shown its "disinclination to interpret statutes in a vacuum. . . . Where a court possesses clues to

the meaning of a statute, there certainly can be no rule of law which forbids [their] use, however clear the words may appear on superficial examination." (Citation omitted; internal quotation marks omitted.) *State* v. *Golino*, 201 Conn. 435, 442, 518 A.2d 57 (1986).

Our search for the meaning of the superficially clear words "vaginal intercourse" and "penetration" is not constrained by the doctrine of strict construction because the law surrounding the crime of rape does not exist in a vacuum, but has a long history that we may consult in aid of our interpretation. As a starting point, we focus on the words "[p]enetration, however slight," because that phrase links § 53a-65 (2) to its statutory and case law antecedents.

We first encounter the notion that the least penetration is sufficient to complete the crime of rape in *State* v. *Shields*, 45 Conn. 256 (1877). The defendant requested that the trial court charge the jury that "to constitute rape actual penetration of the body of the woman by the insertion into her of the private parts of the accused is absolutely necessary." Id., 259. After charging as requested, the court added, " 'but the least penetration is sufficient . . . .' " Id. Our Supreme Court affirmed the charge as correct. Id., 263. That was the first charge regarding penetration challenged in the Connecticut courts, and the concept of minimal penetration has been a part of our law prohibiting sex offenses ever since. See *State* v. *Dubina*, 164 Conn. 95, 97, 318 A.2d 95 (1972); *State* v. *Hickey*, 23 Conn. App. 712, 714, 584 A.2d 473, cert. denied, 217 Conn. 809, 585 A.2d 1233, cert. denied, 501 U.S. 1252, 111 S. Ct. 2894, 115 L. Ed. 2d 1058 (1991). We have found no cases, and the defendant cites none, in which our Supreme Court or this court has construed the least penetration doctrine as requiring penetration of the vagina.

Prior to our adoption of the Penal Code in 1971, General Statutes (Rev. to 1968) § 53-238 provided in relevant part: "Any person who commits the crime of rape upon any female shall be imprisoned . . . . Any person who carnally knows any female under the age of sixteen years shall be guilty of rape . . . ." In addition to enunciating the slightest penetration rule, the Supreme Court defined "carnal knowledge" as sexual intercourse. See *State* v. *Dubina*, supra, 164 Conn. 97; *State* v. *Ferris*, 81 Conn. 97, 99, 70 A. 587 (1908). Sexual intercourse always had its ordinary meaning.

Public Acts 1969, No. 828, § 66, which went into effect in October, 1971, and was codified in 1972 as General Statutes § 53a-65, provided in relevant part: "(1) 'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight. . . ." For the first time, the least penetration rule was made a part of a statute that defined sexual intercourse. There was a separate subsection in § 53a-65 that defined "deviate sexual intercourse" as "sexual contact . . . consisting of contact between the penis and the anus, the mouth and the penis, or the mouth and the vulva . . . ." General Statutes (Rev. to 1972) § 53a-65 (2). The commission comment to § 53a-65 noted that these specific sexual acts were "intended to replace the archaic and ambiguous terms of 'carnal knowledge' and 'indecent assault.' " Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (1969).

The amendments to § 53a-65 in 1975, Public Acts 1975, No. 75-619, § 1, eliminated the words "has its ordinary meaning" as part of the definition of sexual intercourse and inserted the word "vaginal." The legislature also eliminated the word "deviate" and placed all of the definitions of "sexual intercourse" in subsection (2). In addition, the legislature added the sentence:

"Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. . . ." Public Acts 1975, No. 75-619, § 1 (2).

During the hearings on the amendments to the sexual offense statutes, Senator Betty Hudson remarked: "The present statute defines sexual assault only in terms of rape, ordinary intercourse. . . . It doesn't talk about all kinds of assault that can be done sexually on a person. The statute before you does explicitly . . . ." 18 S. Proc., Pt. 7, 1975 Sess., pp. 3222–23. Kay Bergin, executive director of the Permanent Commission on the Status of Women, testified: "It is an omnibus bill and it has many sections. One of the other things that the task force discovered when it did its work was that there were a number of statutes overlapping, confusing and so on that had come into use over many years, and this really is an attempt to straighten out and organize the various statutes and bring them up to date and pick up some [of] the areas which were really no longer useful or were contradictory. So the beginning of this bill has to do with the definitions of the act, sexual intercourse, what it really means. And I won't go into all of this, deviate sexual intercourse is considered to be unnecessary at this point and so this was removed." Conn. Joint Standing Committee Hearings, Human Rights and Opportunities, 1975 Sess., p. 92.

Although the word "vaginal" appeared in a sexual offense statute for the first time in 1975, the aforementioned testimony supports a conclusion that the definitions section of § 53a-65 was not intended to affect the ordinary meaning of the words "sexual intercourse," except as to the language regarding penetration by an object. With respect to the change in § 53a-65 (2), we have stated: "The legislative history reveals that the purpose of changing the definition of sexual intercourse from having its ordinary meaning was to include anal

intercourse, fellatio and cunnilingus . . . ." (Internal quotation marks omitted.) *State* v. *Siering*, 35 Conn. App. 173, 181–82, 644 A.2d 958, cert. denied, 231 Conn. 914, 648 A.2d 158 (1994). We are persuaded that the legislature did not intend to change the ordinary meaning of the words "sexual intercourse." The words "vaginal intercourse" were intended to be descriptive so as to differentiate sexual intercourse in its ordinary meaning from what were previously considered to be the deviate forms of sexual intercourse: fellatio, cunnilingus and anal intercourse.

Our conclusion is buttressed by our Supreme Court's statement: "The rule of statutory construction is that [a] statute should not be construed as altering the common law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 764, 443 A.2d 1274 (1982). Sexual intercourse had previously been defined in the common law as having its ordinary meaning. The "[p]enetration, however slight," language of the statute is a common-law carryover that was designed to eliminate precisely the kind of claim that is made here. The common-law construction of rape was designed to punish the fact, not the degree, of penetration. Nothing in the legislative history of the 1975 amendment that introduced the word "vaginal" into the definitions and nothing in the circumstances surrounding the statute's enactment suggests that the legislature intended a more restrictive definition of sexual intercourse. On the contrary, the meaning of sexual intercourse was expanded to include the manipulation of an object into the genital opening of the victim's body.

Although we ordinarily accept specific definitions in legislation, we may depart from that rule when a literal reading would produce results that are inconsistent

with the intent of the legislature. *Vernon Village, Inc.* v. *Carothers*, 217 Conn. 130, 139, 585 A.2d 76 (1991); *Sienkiewicz* v. *Sienkiewicz*, 178 Conn. 675, 683, 425 A.2d 116 (1979); *Leach* v. *Florkosky*, 145 Conn. 490, 497, 144 A.2d 334 (1958). This case presents such an occasion.

Obviously, one of the purposes of the statute is to protect children from sexual assault. That purpose can be carried out by construing the statute to preclude behavior such as the defendant's without doing violence to any principle of statutory construction. The defendant's act of putting his index finger between the labia majora of a three year old girl falls squarely within the statute's proscription against penetration "by an object manipulated by the actor into the genital . . . opening of the victim's body . . . ." General Statutes (Rev. to 1991) § 53a-65 (2). A finger is considered an "object" that can be manipulated into a genital opening. *State* v. *Grant*, 33 Conn. App. 133, 139–41, 634 A.2d 1181 (1993). By construing the word vaginal as descriptive to distinguish it from the other forms of intercourse, the phrase "[p]enetration, however slight," retains its accepted meaning. In doing so, we also follow that principle of statutory construction that requires us to reconcile and harmonize the parts of a statute to the extent possible. *Marangio* v. *Shop Rite Supermarkets, Inc.*, 11 Conn. App. 156, 160, 525 A.2d 1389, cert. denied, 204 Conn. 809, 528 A.2d 1155 (1987).

Over one-half century ago, our Supreme Court reconciled the doctrines of strict construction and legislative intent. "It is a false humanity which would protect offenders, either by stifling detection and prosecution, or by affording facilities to escape conviction, by unnecessary and artificial technicalities in the administration of the law. The purpose of the rule of strict construction is not to enable a person to avoid the clear import of a law through some mere technicality, but to enable

the people of the State to know clearly and precisely what acts the legislature has forbidden under a penalty, that they may govern their conduct accordingly, and to make sure that no act which the legislature did not intend to include will be held by the courts within the penalty of the law. . . . To enforce the rule beyond its purpose would be to exalt technicalities above substance." (Citations omitted; internal quotation marks omitted.) *State* v. *Faro*, 118 Conn. 267, 274, 171 A. 660 (1934).

The *Faro* rationale underlies the rule that criminal statutes must be strictly construed. "The rule of strict construction, however, does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. . . . Common sense should be applied to the language of a penal statute, particularly if otherwise absurdity or frustration of the evident design of the legislature results." (Citation omitted.) *State* v. *Morelli*, 25 Conn. App. 605, 609, 595 A.2d 932 (1991).

For us to direct a judgment of acquittal here, as the defendant contends we must, we would have to strain and distort the words of the statute to reach an absurd and bizarre result. The defendant's abhorrent act of putting his index finger between the labia of a three year old girl is conduct that is clearly intended to be within the scope of the statute because such penetration is sufficient under the least penetration doctrine. If we were to adopt the construction that is proffered by the defendant, we would set the stage for drawn out battles over the degree, rather than the fact, of penetration. By applying the least penetration doctrine with respect to the genital opening, we preclude such disputes.

### B

The defendant argues that even if we conclude that the information properly charges a violation of § 53a-70 (a) (2), the evidence was not sufficient to convict

him because the labia majora is not an opening, but a "structure" that cannot be digitally penetrated. He also claims that there was no evidence that the defendant did anything more than place his hand on top of the victim's labia majora. We are unpersuaded.

First, the expert testimony at trial established that the labia majora consist of two folds between which a finger or other object can pass. The defendant's claim that penetration in the context of both the information and the court's charge means *through* the skin and tissue of a labium is strained and illogical. Penetration, in the context of the statute, obviously means intrusion through an opening and not penetration through skin and tissue. Second, the defendant dismisses the victim's direct testimony that the defendant put his finger "inside" her "crotch." He claims that this testimony was ambiguous because N had earlier testified that the defendant placed his hand inside her bathing suit. It is axiomatic that this was grist for the jury's mill. Authority abounds that we do not sit as a seventh juror or retry the facts, but rather we determine whether any rational jury could have so found. See *State* v. *Smith*, 46 Conn. App. 321, 326, 699 A.2d 262 (1997); *State* v. *Ketchum*, 45 Conn. App. 270, 281, 696 A.2d 987, cert. denied, 242 Conn. 910, 697 A.2d 368 (1997). We conclude, therefore, that the evidence was sufficient to sustain the conviction.

## II

The defendant makes one last claim with respect to the issue of penetration. He asserts that the trial court's "absurd" interpretation of sexual intercourse as penetration of the genital opening would eliminate any distinction between sexual assault in the first degree and the less serious offenses of sexual assault in the third and fourth degree by way of "sexual contact." General Statutes 53a-65 (3) defines sexual contact as, inter alia,

contact with the "intimate parts of a person . . . ." General Statutes § 53a-65 (8) defines intimate parts as, inter alia, the "genital area . . . ." The defendant makes much of the fact that the trial court, in denying his motion for a judgment of acquittal, stated that the words "genital or anal opening" in § 53a-65 (2) meant genital *area* or anal opening. For the reasons that we have previously discussed, we conclude that the trial court properly denied the defendant's motion for a judgment of acquittal. We may affirm a trial court's decision that reaches the right result, albeit for the wrong reason.[7] See *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 151, 709 A.2d 1075 (1998); *Herrmann* v. *Summer Plaza Corp.*, 201 Conn. 263, 274, 513 A.2d 1211 (1986).

The trial court instructed the jury that "sexual intercourse means penetration into the genital opening . . . . Our law provides that penetration, however slight, is sufficient to complete sexual intercourse and does not require the emission of semen. Our law further provides that penetration may be committed digitally, that is, by the finger or fingers into the genital opening of the victim's body." The court also instructed the jury: "You may consider the labia majora as an anatomical part of a woman's genital opening."

There was medical testimony to the effect that the labia majora are part of the genital area of a female, acting as a "flap" that covers the labia minora and the vagina. There was also medical testimony that a finger could be inserted between "the two labia majora" and could reach the vagina. Most importantly, Frederick Berrien, a physician, was asked, "Is the space between the labia the beginning of the genital opening?" He responded: "Yes, it is."

---

[7] More importantly, the trial court never used such language in its instructions to the jury.

We find no reference in the court's charge to penetration of a "genital area" as the defendant claims. The court's instructions properly tracked both the statute and the evidence, and provided sufficient guidance for the jury.

## III

The defendant next claims that the trial court improperly restricted the cross-examination of both N's mother, S, and Kevin Conter, N's psychologist, regarding S's prior history of sexual molestation[8] and her previous disclosure of that fact to Conter. Specifically, the defendant relies on Conter's statement that "N's mother has been sexually molested, and her own experiences impact her reactions to N's experiences and can negatively impact any intervention" in support of the proposition that S may have influenced N's disclosures in this case.[9] Notwithstanding the trial court's determination that S's prior sexual molestation lacked relevance and that the pursuit of that line of questioning would, in effect, have required a trial within a trial, the defendant argues that his cross-examination of both S and Conter was improperly restricted.[10] He claims a

---

[8] The defendant claims that S was molested when she was a child, but Conter's statement that was disclosed to the defendant does not say how old S was at the time of the molestation.

[9] This statement was originally contained in Conter's notes dated December 16, 1992. At the defendant's request, the trial court ordered the state to turn over any material that may have been exculpatory for the defendant. These notes from Conter were included in that disclosure to the defendant.

[10] On appeal, the state claims that the statement at issue should be precluded because it is a privileged statement of a patient pursuant to General Statutes § 52-146c. The state claims that proper procedures were not followed prior to disclosing the statement. That procedure would involve a preliminary showing by the defendant that failure to produce the records would likely impair his right to impeach the witness and a request of the witness for permission for the court to conduct an in camera inspection of the records. If the witness refuses to give permission, the court can strike the witness' testimony. If assent is obtained and an in camera inspection conducted, a further waiver must be obtained from the witness to release relevant portions of the record to the defendant. See *State* v. *Grant*, supra,

violation of his sixth amendment rights to confrontation, to present a defense and to due process because N's allegations "were a product of her mother's creation and influence," and Conter had expressed concern about that possibility.[11] We disagree.

## A

With respect to S, the defendant claims that he was improperly restricted from questioning her about her past history of sexual molestation because her history "may have played a key role in N's subsequent disclosures, and in particular, S's bias and motives both as a witness and as a key factor in N's testimony."[12] The defendant made no offer of proof as to why the statement at issue shows bias or a motive on the part of S to influence her daughter to "manufacture" a charge against the defendant. The statement refers only to how S *reacted* to N's molestation and how this reaction could negatively affect Conter's efforts to treat N. S's reaction to the molestation of her daughter and the subsequent treatment could have arisen only after there had been a determination that the molestation had occurred.

"It is axiomatic that [a] defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . In determining whether a defendant's right of cross-examination has

33 Conn. App. 655–56. It is not clear what procedure was followed here. In any event, the state did not raise this claim in the trial court. Therefore, we decline to address it. See Practice Book § 60-5.

[11] In his brief, the defendant states that his "theory of defense was that in actuality [S] invented the alleged molestation in her mind and then repeatedly related it to N, ultimately convincing N that indeed it occurred."

[12] Although the defendant did not attempt to cross-examine S about this matter, the issue was properly preserved because the court clearly ruled that the defendant could not use the statement in any fashion.

been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Joyce*, 243 Conn. 282, 307, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998); see also *State* v. *Lindstrom*, 46 Conn. App. 810, 820, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997); *State* v. *Johnson*, 21 Conn. App. 291, 293, 573 A.2d 1218 (1990).

The trial court determined that the defendant had an extensive opportunity to cross-examine S in this case[13] and that an inquiry into S's prior history of sexual molestation not only would be irrelevant to whether the defendant perpetrated the alleged acts in this case,[14] but would require having the therapists who may have previously treated S testify as to what impact this prior sexual abuse had on her. This would, the court concluded, contribute to a trial within a trial.[15] "The trial court has wide discretion to determine the relevancy

[13] The trial court stated: "The record should further state that [S] was cross-examined by [the defendant] in excess of two hours, possibly three hours, nearly half a day that this witness was on the stand."

[14] The trial court was not persuaded by the defendant's argument that without a history of being sexually molested herself, S would not have brought N to therapy or bought her the book, "Feel Safe." The court also stated that "[t]here are many instances that appear in this court where mothers encourage their children to enter into therapy, they buy them this type of literature . . . [and] to suggest in effect that none of this would have occurred [absent S's own past history of being sexually molested] is clearly speculative and a disservice to the mother."

[15] Our review of the record further reveals that the defendant made no offer of proof to the court with respect to how his pursuit of S's past history of being sexually molested would be relevant to motive or bias in this case. "It is the sole responsibility of the appellant to provide an adequate record for review. *Keiser* v. *Conservation Commission*, 41 Conn. App. 39, 46, 674 A.2d 439 (1996); Practice Book § 4061 [now § 60-5]." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 47 Conn. App. 91, 101, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998).

of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 653, 712 A.2d 919 (1998), quoting *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995). Accordingly, we conclude that the trial court's restriction of the cross-examination of S in this case was proper.

## B

The defendant also argues that the trial court improperly restricted his cross-examination of Conter with respect to S's disclosure to Conter regarding her prior sexual molestation. The state called Conter as a constancy of accusation witness. The trial court determined that the defendant's attempted cross-examination of Conter with respect to S's previous disclosure to him regarding her own history of prior sexual molestation was not relevant and would contribute to the evolution of a trial within a trial.[16]

We are persuaded that Conter's statement, on which the defendant relies, did not purport to evince concern that S's own prior history of sexual molestation might have impacted N in this case. We are not persuaded that the defendant's questioning of Conter with respect to S's prior history of sexual molestation would be relevant to whether she influenced N in this case. It does not follow from Conter's statement that N's identification of Uncle Ronnie was in any way influenced by S. Moreover, S's *reactions* to N's experiences are not at all relevant to whether N was actually molested by the defendant.

---

[16] The trial court stated: "[C]learly, matters pertaining to [the victim] that are contained in this record that would be exculpatory would be permissible for cross-examination . . . [but] allowance of this particular statement . . . would be grossly collateral and would require a trial within a trial of this case . . . ."

For all the reasons discussed in part II A, we conclude that the trial court properly determined that this proposed line of questioning was not relevant and properly restricted the cross-examination of Conter in this case.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

HENNESSY, J., dissenting. Because I agree with the defendant's first three claims, which rest on his assertion that the trial court improperly limited the interpretation of the term "sexual intercourse" to the mere penetration of the labia majora[1] and, therefore, improperly allowed the state to amend the information, I respectfully dissent.

If the trial court's interpretation was improper, the defendant claims that (1) the trial court should have granted his motion for a judgment of acquittal at the close of the state's case because the state failed to present evidence from which a jury could find vaginal penetration, as required by General Statutes (Rev. to 1991) § 53a-65 (2) and General Statutes (Rev. to 1991) § 53a-70 (a) (2), (2) the jury charge on sexual intercourse was improper and (3) there was insufficient evidence to sustain his conviction. The defendant does not argue that the facts charged could not constitute a crime, but rather that they cannot support a conviction of first degree sexual assault. Therefore, the trial court improperly allowed the state to amend the information and denied the motion for judgment of acquittal. I believe that because the trial court improperly interpreted the term sexual intercourse, the defendant's conviction of first degree sexual assault must be reversed. In addition, because the trial court predicated the conviction of risk of injury to a child on a conviction of sexual

---

[1] The labia majora are the two outer folds of skin that enclose the external genital organs of the female. See H. Gray, Anatomy of the Human Body (29th Ed. Goss 1973), p. 1330; Webster's Third New International Dictionary.

assault in the first degree, the conviction of risk of injury to a child must be reversed and remanded for a new trial.

## I

The defendant was charged by an amended long form information with first degree sexual assault. The information stated in relevant part that "on or about August 2, 1992, in Manchester, Connecticut, Ronald Joseph Albert engaged in sexual intercourse with a child under thirteen (13) years of age, to wit: he penetrated the labia majora of the genitalia of a three (3) year old girl with his finger or fingers, in violation of § 53a-70 (a) (2)." General Statutes (Rev. to 1991) § 53a-65 (2) provides that " '[s]exual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus . . . ." The state did not allege anal intercourse, fellatio or cunnilingus in the amended information. Therefore, the dispositive issue was whether penetration of the labia majora alone constitutes vaginal intercourse.

In support of its interpretation, the trial court relied on § 53a-65 (2), which provides in relevant part that "[p]enetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body . . . ." The trial court interpreted the phrase to mean genital *area* or anal opening. It is important to note that the court stated, when it ruled on the defendant's motion for a judgment of acquittal and again in its charge to the jury, that it was undisputed that *no penetration of the victim's vagina occurred.*

The court improperly interpreted the phrase "into the genital or anal opening" as meaning into the genital *area* or anal opening. The term genital, as used in § 53a-65 (2), is an adjective, not a noun, and to expand the meaning of it to include the genital area is nonsensical. The legislature did not use the noun "genitals," which

would have supported the trial court's interpretation. The adjectives "genital" and "anal" both modify the noun "opening."

The majority opinion holds that vaginal intercourse can be committed by the penetration of the labia majora alone. Vaginal intercourse, however, requires more than penetration of the labia majora; *it requires penetration of the vagina.* Of the four alternative definitions of sexual intercourse provided in § 53a-65 (2), cunnilingus is the only theory that does not require penetration for the commission of the offense. *State* v. *Kish,* 186 Conn. 757, 764, 443 A.2d 1274 (1982). " 'Cunnilingus is sexual stimulation of the clitoris or vulva by the lips or tongue.' " *State* v. *Storlazzi,* 191 Conn. 453, 463, 464 A.2d 829 (1983), quoting *State* v. *Kish,* supra, 764. The clitoris is enclosed by the labia majora. H. Gray, Anatomy of the Human Body (29th Ed. Goss 1973), p. 1330. The labia majora must necessarily be penetrated or passed through to reach the clitoris. Therefore, because penetration of the genital opening is not required for cunnilingus but is required for vaginal intercourse, penetration of the genital opening must require more than the penetration of the labia majora alone.

Moreover, the majority's interpretation of vaginal intercourse is antithetical to its common meaning. "In the absence of special circumstances, the words of a statute are to be accorded their common meaning. General Statutes § 1-1 [a]; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698 [1966]." *Torrington Water Co.* v. *Board of Tax Review,* 168 Conn. 319, 323, 362 A.2d 866 (1975). Furthermore, it is a well established rule that "penal statutes are to be strictly construed"; *State* v. *McCarthy,* 25 Conn. App. 624, 626, 595 A.2d 941, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991); and "are to be interpreted strictly *against* the state." (Emphasis added.) *State* v. *Desimone,* 241 Conn. 439, 455, 696 A.2d 1235 (1997). These

principles underlie "the general rule of statutory interpretation that the intent of the legislature is to be found not in what it meant to say, but in what it did say. *State* v. *Roque*, 190 Conn. 143, 150, 460 A.2d 26 (1983), quoting *Gomeau* v. *Forrest*, 176 Conn. 523, 526, 409 A.2d 1006 (1979). In ascertaining that intent, [i]f the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature . . . and we need inquire no further. *State* v. *Lubus*, 216 Conn. 402, 407, 581 A.2d 1045 (1990), quoting *State* v. *Mattioli*, [210 Conn. 573, 576, 556 A.2d 584 (1989)]. Further, interpretation of a penal statute must accord with common sense and commonly approved usage of the language. *State* v. *Edwards*, 201 Conn. 125, 132, 513 A.2d 669 (1986); *State* v. *Roque*, supra, 151." (Internal quotation marks omitted.) *State* v. *McCarthy*, supra, 626.

The term vaginal is an adjective and means "of . . . a vagina." Webster's Third New International Dictionary. The majority's conclusion that vaginal intercourse can be committed by the penetration of the labia majora, when the state concedes that no vaginal penetration occurred, is contrary to common sense and the commonly approved usage of the term. I believe that penetration of the vagina, however slight, is required to commit vaginal intercourse.

The majority's reliance on the long history of the language, "[p]enetration, however slight," is misplaced and does not advance the discussion. The resolution of the defendant's claim requires us to determine *what* must be penetrated.

The linchpin of the majority's argument is that "the legislature did not intend to change the ordinary meaning of the words 'sexual intercourse.' The words 'vaginal intercourse' were intended to be descriptive so as to differentiate sexual intercourse in its ordinary meaning from what were previously considered to be the deviate forms of sexual intercourse: fellatio, cunnilingus and

anal intercourse." The majority fails to recognize, however, that the ordinary meaning of sexual intercourse *always* required penetration of the vagina.

First, as the majority correctly points out, the concept of minimal penetration was first used in the rape context. *State* v. *Shields*, 45 Conn. 256 (1877). In *Shields*, however, the examining physician testified that " 'penetration had taken place as far as the internal organs of generation, whether further or not I cannot from my examination say . . . .' " Id., 258. The defendant, in essence, requested that the court instruct the jury that *complete* penetration was required to constitute rape. Id., 259. The court instructed the jury that penetration was absolutely necessary, but that " 'the least penetration is sufficient' " . . . . Id. Vaginal penetration was not disputed, only *the degree* of vaginal penetration.

Second, "[p]rior to 1975, sexual intercourse was defined by General Statutes (Rev. to 1975) § 53a-65 as having 'its ordinary meaning and occurs upon any penetration . . . .' " *State* v. *Siering*, 35 Conn. App. 173, 180, 644 A.2d 958, cert. denied, 231 Conn. 914, 648 A.2d 158 (1994). "[T]he 'ordinary meaning' of sexual intercourse contemplates a continuous act of penetration . . . .' " Id., 181. It is clear that the ordinary definition of sexual intercourse prior to 1975 involved penetration of the vagina. "Public Act 75-619 changed the definition in part to provide: 'Penetration, however slight, is sufficient to complete vaginal intercourse . . . .' " Id., 180–81. This court has held that the amendment did not change the ordinary meaning of sexual intercourse, but rather construed "the statutory reference to penetration as establishing the minimum amount of evidence necessary to prove that intercourse has taken place." Id., 182.

"It is a basic principle of law that common sense is not to be left at the courtroom door; *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985); *State* v. *Perez*,

10 Conn. App. 279, 291, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987); and courts will not pretend to be more ignorant than the rest of mankind. *Masline* v. *New York, N. H. & H. R. Co.*, 95 Conn. 702, 709, 112 A. 639 (1921). In anybody's everyday lexicon, continued penetration of the female sex organ by the male sex organ . . . is factually sexual intercourse' . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Siering*, supra, 35 Conn. App. 184.

"When an information sufficiently sets out the offense with which a defendant is charged, 'the state is limited to proving that the defendant has committed the offense in substantially the manner described.' " *State* v. *Newton*, 8 Conn. App. 528, 532, 513 A.2d 1261 (1986); see *State* v. *Ruiz*, 171 Conn. 264, 270, 368 A.2d 222 (1976); *State* v. *Cole*, 8 Conn. App. 545, 553, 513 A.2d 752 (1986). The state had the burden to prove, therefore, that the defendant engaged in sexual intercourse, namely vaginal intercourse, by penetrating the labia majora. Under § 53a-65 (2), however, penetration of the labia majora *alone* cannot constitute vaginal intercourse.

The facts charged in the amended information cannot, even if proved, constitute vaginal intercourse, which is required to support the defendant's conviction under § 53a-70 (a) (2). The pivotal issue is not whether the act allegedly committed by the defendant could constitute a crime under this section if properly charged, but whether the facts *as charged* constitute a crime under this statutory section. Therefore, the trial court improperly allowed the state to amend the information to allege that penetration of the labia majora alone constituted sexual intercourse and improperly denied the defendant's motion for a judgment of acquittal.

I would reverse the judgment and remand the case with direction to render judgment of not guilty on the charge of first degree sexual assault.

## II

The defendant was also charged with risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21. I believe that this conviction must be reversed and the case remanded for a new trial.

In its charge to the jury, the trial court instructed the jury as follows: "Now you may return a verdict of guilty on both counts or a verdict of not guilty on both counts. If you return a verdict of not guilty on the first count, that is sexual assault in the first degree, you ought to return a verdict of not guilty on the second count because the second count is triggered based on the evidence submitted on behalf of the first count. If, however, you find the defendant guilty on the first count, you are not required to find him guilty on the second count. That is, you may find him, if you so choose, guilty on the first count and not guilty on the second count."[2]

In essence, the trial court predicated a conviction of risk of injury to a minor on a conviction of first degree sexual assault. "In the absence of a clear indication to the contrary, juries are presumed to follow the instructions that they are given. *State* v. *Guess*, 39 Conn. App. 224, 235, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995)." (Internal quotation marks omitted.) *State* v. *Jones*, 44 Conn. App. 338, 350, 689 A.2d 517, cert. denied, 240 Conn. 929, 693 A.2d 301 (1997). We must presume that the finding of guilty of risk of injury to a child is in part based on the finding of guilty of first degree sexual assault.

I also believe that the trial court improperly restricted the defendant's cross-examination of S regarding her prior history of sexual molestation as a child. It was

---

[2] In reversing the defendant's conviction, I do not reach the propriety of the trial court's instruction.

more than one year after the incident, on November 30, 1993, that N disclosed, for the first time to someone other than her mother, that "a bad man" had touched her and that the "bad man" was her Uncle Ronnie. In addition, S purchased a book for children dealing with good and bad touching. S testified that she read this book many times to N. The defendant argued that S's past history was relevant to motive and bias because for more than one year, N told only S that the defendant touched her. The defendant sought to cross-examine S as to whether her own experience could have influenced N's recollection of the events and identification of the defendant.

"[I]t is axiomatic that [a] defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . *State* v. *Joyce*, 243 Conn. 282, 307, 705 A.2d 181 (1997). Moreover, [i]t is true that the scope and extent of cross-examination generally rest within the sound discretion of the trial court. . . . This discretion arises, however, only after the defendant has been permitted cross-examination and impeachment of a witness sufficient to satisfy the sixth amendment. . . . [A]n important function of cross-examination is the exposure [of] a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . *State* v. *Joyce*, 45 Conn. App. 390, 397–98, 696 A.2d 993, cert. granted, 243 Conn. 904, 701 A.2d 336 (1997)." (Internal quotation marks omitted.) *State* v. *Santiago*, 48 Conn. App. 19, 24, 708 A.2d 969, cert. denied, 245 Conn. 901, 719 A.2d 1164 (1998).

Because I believe that the motion for a judgment of acquittal should have been granted as to the first degree sexual assault count and that the jury should not have been allowed to reach that count, or, in the alternative,

that the trial court improperly restricted the defendant's cross-examination of S, I would reverse the defendant's conviction of risk of injury to a child and remand the case for a new trial on that count.